MICHAEL COWAN, Plaintiff-Appellee, v. INSURANCE COMPANY OF NORTH AMERICA, Defendant-Appellant.

(No. 58719; ▮▮▮▮▮▮▮▮▮)

First District (2nd Division)—September 24, 1974.

886

Tom L. Yates and Delbert T. Been, both of Chicago, for appellant.

Howard R. Weiss and Joseph P. Griffin, both of Chicago, for appellee.

Mr. JUSTICE STAMOS delivered the opinion of the court:

This is an appeal from an order of the circuit court granting summary judgment for plaintiff and denying defendant's motion to dismiss. The action was brought for declaratory judgment on a comprehensive liability insurance policy issued by defendant and sought a determination that defendant, pursuant to the policy of insurance, was obligated to satisfy an outstanding judgment entered against plaintiff.

So far as here material, the complaint alleged that defendant had issued a policy to plaintiff insuring against liability for injuries sustained by any person; that while the policy of insurance was in effect, plaintiff was involved in a traffic dispute with one Harry J. Graw; that in the ensuing argument, plaintiff inadvertently came into contact with Graw causing the latter to lose his balance and fall to the ground; and that the act causing the fall and injury of Graw was unintended and accidental.

The complaint further alleged that as a result of the foregoing, Graw filed an action for assault and battery against plaintiff which was de-

fended by defendant's attorneys under a reservation of rights, on a combination of defenses of accidental injury and self-defense; that after a jury verdict, a judgment for $8,000 was entered in favor of Graw which the present defendant has refused to pay; and that such refusal is contrary to the contract of insurance entered into between the parties.

Defendant, in a motion to dismiss, argued that by virtue of the previous litigation between Graw and Cowan, the latter was collaterally estopped to deny that the injury inflicted upon Graw was intentional and, therefore, since any act committed by the insured with intent to cause injury is excluded from coverage under the contract of insurance, defendant was absolved from liability.

After the filing of various pleadings and the submission of memoranda, the order of the trial court denied defendant's motion to dismiss and granted plaintiff's motion for summary judgment.

On appeal, defendant urges reversal of the judgment based upon the terms of the policy of insurance and upon the cause of action for assault previously adjudicated between Graw and Cowan. The exclusionary clause in question provided that coverage does not extend to "any act committed by or at the direction of the insured with intent to cause injury or damage to person or property." In support of defendant's assertion that the Graw-Cowan incident falls within the exclusionary provision, we are referred to the complaint in the assault action against Cowan. The charging portion of the complaint alleged:

"1. That at Chicago, Illinois, on the 31st day of December, 1965, the defendant (Cowan) violently assaulted the plaintiff (Graw) and wrongfully struck him with his fists on the body and knocked him down and fractured his right leg;

2. That said assault was willful [sic] and malicious."

Defendant concludes that the allegations of the complaint and the verdict thereon conclusively determine that Cowan intended to injure Graw. See *Wendell v. Union Mutual Fire Insurance Co.*, 123 Vt. 294, 187 A.2d 331; *Abbott v. Western National Indemnity Co.*, 165 Cal.App. 2d 302, 331 P.2d 997.

Plaintiff initially emphasizes that the issue in the present cause is not whether he committed an intentional tort against Graw, but rather, whether he intended to injure Graw. Notwithstanding the commission of an intentional act by the insured, plaintiff asserts that the exclusionary clause is applicable only when it can be demonstrated that the injury was intentionally inflicted. In pointing to the distinction between an intentional act and an intended injury, plaintiff refers us to *Smith v. Moran*, 61 Ill.App.2d 157, 209 N.E.2d 18, and *Baldinger v. Consolidated*

*Mutual Insurance Co.,* 15 App.Div.2d 526, 222 N.Y.S.2d 736, wherein the courts held upon the facts there involved, that an assault and battery was not an intentional injury within the meaning of an exclusionary clause identical in effect to one before this court.

In the present case, plaintiff argues that in his complaint he alleged that there was a minimal contact between himself and Graw, and that the resulting injury of a fractured leg was unintentional and bizarre in relation to the incident. Plaintiff further argues that it is the defendant who is estopped from relitigating the issue of whether the injury was intentionally caused. This argument is predicated upon the fact that although Graw, in his complaint for assault, prayed for exemplary damages and a finding that "malice is the gist of the action," [1] the verdict order affirmatively discloses that the jury assessed "0" as exemplary damages. Because the jury failed to award exemplary damages, plaintiff concludes that any finding of an intentionally caused injury is necessarily precluded.

Although both parties argue the applicability of the collateral estoppel doctrine, and disagree in their respective assessments of the prior adjudication, we feel compelled to question the basic assumption from which their arguments follow. We initially note that questions of estoppel and the question of whether an injured party's claim against an insured is within the policy's coverage are not completely unrelated. The interrelationship of the two is discussed in *Apex Mutual Insurance Co. v. Christner,* 99 Ill.App.2d 153, 160-163, 240 N.E.2d 742:

> "Difficulties arise when an injured party brings an action against an insured, and investigation by the insurer reveals a breach of condition or an essential fact tending to place the claim outside the coverage of the policy. The insurer's interest in defending against the claim while restricting its obligation to the terms of the policy, presents the insurer with an urgent strategical problem: whether or not to defend the insured in court. [Citation.]
>
> It is well settled that assumption of the insured's defense constitutes a waiver by the insurer of all questions of policy coverage. [Citations.] If, therefore, in spite of its doubts as to coverage, the insurer elects to take over the insured's defense, it will afterwards be estopped from denying its own liability under the policy. The estoppel referred to here is 'estoppel in pais'; it is

---

[1] No special interrogatory as to whether "malice is the gist of the action" was submitted.

ordinarily justified on the ground that the insurer has prejudiced the insured's right to control his own defense. [Citations.]

With this in view, the insurer may wholly decline to assume the insured's defense when coverage is in doubt. Having refused to enter the litigation, the insurer cannot subsequently be estopped from setting up in its own defense any matter not decided in the original action. [Citations.] Abstention presents a hazard, however, since the insurer will be 'collaterally estopped' in the subsequent suit as to all issues which had been decided in the prior action. [Citations.] Further, the danger of collateral estoppel is substantially increased if the insured and injured parties are inclined to conspire for the purpose of establishing such facts as they may select to place themselves under the policy's coverage provisions. [Citation.] Finally, the nonliability of the insured is potentially the most effective bar to any policy claims against the insurer. Where the possibility exists of making a successful defense on behalf of the insured, the insurer has much to gain from placing its first reliance upon this line of action, since by declining to defend, it would sacrifice all opportunity to contest the injured party's claim.

Clearly, then, neither of these two alternatives is very satisfactory to an insurer. Sims v. Illinois Nat. Cas. Co. of Springfield, 43 IllApp2d 184, 199, 193 NE2d 123, cited with approval in Lincoln Cas. Co. v. Vic & Mario's, Inc., 62 IllApp2d 262, 267, 210 NE2d 329, discusses the insurer's options in such a predicament:

> However, all authorities agree that quite often an insurer is faced with a dilemma as to whether to defend or to refuse to defend. In cases of doubt the answer is simple. (1) Seek a declaratory judgment as to its obligations and rights or (2) defend under a reservation of rights.

The reservation of rights is a means by which, prior to determination of the liability of the insured, the insurer seeks to suspend the operation of the estoppel doctrines through a nonwaiver agreement. When coverage is in doubt, the insurer will offer to defend the insured under such an agreement, reserving to the insurer all of its policy defenses in case the insured is found liable. Courts have generally held such agreements valid. [Citations.]

Estoppel in pais operates as a result of the insurer's monopolization of the insured's defense, since the insured, in reliance thereon, refrains from seeking other counsel. But no such reliance

can be claimed where the insurer has defended under a reservation of rights, since the insured could have rejected the insurer's offer of counsel if he had chosen to do so. [Citations.] Whether, in reserving rights, the insurer also avoids the strictures of collateral estoppel is, however, unsettled. [Citation.] It may be that since collateral estoppel arises from privity and since the non-waiver agreement does not alter the fact of privity, it would not suspend the operation of collateral estoppel, thus substantially diminishing the value of a reservation of rights in many cases. [Citation.]"

The question lastly posed in *Apex* is, in general terms, the issue presented in the instant case. From the analysis in *Apex*, it is apparent that when an insurer defends a claim against its insured under a proper reservation of rights, the question of estoppel is no longer an equitable one, but rather that branch of *res judicata* denominated estoppel by verdict or collateral estoppel. As a general rule, collateral estoppel may be invoked only when both the party invoking the doctrine and the party against whom it is invoked were adverse parties, or their privies, in the prior adjudication. (I.L.P.*Judgments* § 404 (1956).) However, in certain instances, exception is made where liability rests upon derivative responsibility, such as indemnitor and indemnitee. (*Sanitary District v. United States Fidelity & Guaranty Co.*, 392 Ill. 602, 65 N.E.2d 364; *Palmer v. Mitchell*, 57 Ill.App.2d 160, 206 N.E.2d 776.) This rule is based upon the desirability of judicial expediency and the presumed identity of interests between the indemnitor and indemnitee. As stated in *Farm Bureau Mutual Automobile Insurance Co. v. Hammer* (4th Cir. 1949), 177 F.2d 793, 799:

"The underlying purpose of the doctrine is to obviate the delay and expense of two trials upon the same issue—one by the injured party against the indemnitee and the other by the indemnitee, or the injured party against the indemnitor. This is possible because it is assumed that the interests of the parties to the contract of indemnity in opposing the injured person's claim are identical; and it is accomplished by giving the indemnitor an opportunity to appear in the first suit on behalf of the indemnitee so that everything that can be offered in exculpation of the indemnitee by either party to the indemnity contract may be presented. The indemnitor may not be under a contractual obligation to defend, but if he fails to assume the burden of the defense he takes the risk for he is bound by any judgment against the indemnitee where their interests in the defense of the suit are identical."

■■ Thus, an insurer who defends (or fails to defend) an action for negligence (within the policy coverage) against its insured, cannot, after an adverse judgment against the insured, claim that it is not bound by the prior adjudication when the sole question in both the original suit and the subsequent suit against the insurer is the negligence of the insured. (See *Carolina Veneer & Lumber Co. v. American Mutual Liability Insurance Co.*, 202 S.C. 103, 24 S.E.2d 153; *State Farm Mutual Automobile Insurance Co. v. Shelton* (Ky.), 368 S.W.2d 734.) However, the reason for the rule no longer exists when there is no identity of interests between the insured and insurer in the original tort action. A typical situation is when a tort claim is brought against an insured for negligence, but investigation by the insurer leads to the conclusion that the act was intentional and, hence, not within the coverage of the policy. The dilemma of the insurer immediately presents itself: if it defends the action, it may later be precluded from raising the intentional nature of the wrongful act under an estoppel *in pais* argument; if it refuses to defend the action, which on the face of the complaint is within the policy coverage, it faces the possibility of being subsequently bound by the conclusive nature of the judgment. (See *Miller v. United States Fidelity & Guaranty Co.*, 291 Mass., 445, 197 N.E. 75.)[2]

In instances where the insurer refuses to defend, the better-reasoned cases hold that the insurer is not bound by the prior adjudication on questions of policy coverage. The reason for foregoing the rigors of the collateral estoppel concept is stated in the *Hammer* case:

"It is, however, obvious that the binding effect of a judgment against the insured does not extend to matters outside the scope of the insurance contract, and that the Insurance Company is neither obligated to defend nor bound by the findings of the court if the claim against the insured is not covered by the policy. To hold otherwise would be to estop the Insurance Company by the acts of parties in a transaction in which it has no concern and over which it has no control, and to deprive it of its day in court to show that the transaction is foreign to the contract of insurance." 177 F.2d at 799-800.

---

[2] Illinois law holds that when the insurer refuses to defend an action, which on the face of the complaint is within the policy coverage, the insurer breaches its duty to defend under the terms of the contract. Having breached its contractual duty, the insurer is "estopped" from raising issues of policy coverage. (*Sims v. Illinois National Casualty Co.*, 43 Ill.App.2d 184, 193 N.E.2d 123; *McFadyen v. North River Insurance Co.*, 62 Ill.App.2d 164, 209 N.E.2d 833; *Palmer v. Sunberg*, 71 Ill. App.2d 22, 217 N.E.2d 463.) The estoppel referred to in these cases is equitable in nature and follows only when there is a breach of contract. Consequently, these decisions are not authority for the legal doctrine of collateral estoppel, but do serve to point to another aspect of the insurer's dilemma.

The reasoning of the *Hammer* decision has been followed in subsequent cases. *Stout v. Grain Dealers Mutual Insurance Co.* (4th Cir. 1962), 307 F.2d 521; *Sims v. Nationwide Mutual Insurance Co.*, 247 S.C. 82, 145 S.E.2d 523.

Moreover, when the insurer finds itself in a conflict of interest situation,[3] and opts to defend the tort claim under a properly communicated reservation of rights, we are of the opinion that the principles stated above are equally applicable. (See *Fisher v. Firemen's Fund Indemnity Co.* (10th Cir. 1957), 244 F.2d 194; *Centennial Insurance Co. v. Miller* (E.D. Cal. 1967), 264 F.Supp. 431.) In this regard the reservation of rights, to be effective, must be communicated to the insured, and must fairly inform the insured of the insurer's position. (44 Am.Jur.2d *Insurance* § 1556.) By properly reserving its rights to question coverage and assert policy defenses, the insurer is not bound under the equitable doctrine of estoppel (see *Fisher v. Firemen's Fund Indemnity Co., supra*), and because a conflict of interest does exist between the claim in the original tort claim and the question of coverage, it cannot be said that the reservation of rights operates as a private waiver agreement of the collateral estoppel doctrine (See *Iowa Mutual Insurance Co. v. Fred M. Simmons, Inc.*, 262 N.C. 691, 138 S.E.2d 512); the issues as to coverage and the issues in the original tort claim are different, and therefore, the concept of collateral estoppel does not apply.

From these principles we address ourselves to: (1) the issue relating to the insurer's liability under the contract of insurance; and (2) whether the Graw-Cowan litigation necessarily adjudicated the conduct of Cowan as it relates to the issue of coverage.

■■■ Under the contract of insurance, coverage does not extend to "any act committed by or at the direction of the insured with intent to cause injury or damage to person or property." The language of the exclusion has been held to be ambiguous, and accordingly, it must be construed against the insurer. *Baldinger v. Consolidated Mutual Insurance Co.*, 15 App.Div.2d 526, 222 N.Y.S.2d 736; *Gray v. Zurich Insurance Co.*, 65 Cal.2d 263, 54 Cal. Rptr. 104, 419 P.2d 168; *American Insurance Co. v. Saulnier* (D. Conn. 1965), 242 F.Supp. 257. Consequently, the construction generally placed upon the language is that injury or damage is "caused intentionally" within the meaning of the exclusionary clause, if the insured has acted with the specific intent to cause harm to a third party. (*Morrill v. Gallagher*, 370 Mich. 578, 122

---

[3] To illustrate: in the instant case the insurer's investigation may have suggested a conflict between the insured's acts and whether such acts, if established by the evidence, will prove "intent" thereby providing the insurer a claim of exclusion under the policy.

N.W.2d 687; *Hawkeye Security Insurance Co., v. Shields;* 31 Mich. App. 649, 187 N.W.2d 894; see *Smith v. Moran,* 61 Ill.App.2d 157, 209 N.E. 2d 18.) Under this construction, it has been held that neither wilful, wanton, or reckless misconduct amounts to a specific intent to cause injury. (*Crull v. Gleb* (Mo. App.), 382 S.W.2d 17; *American Insurance Co. v. Saulnier, supra.*) Therefore, before defendant can claim that it is absolved from liability, it must be demonstrated that Cowan specifically intended to injure Graw.

Precedent to a determination of the issues actually adjudicated in the Graw-Cowan litigation, we think it appropriate to note some general observations on the nature of assault and battery and self-defense, and their relationship to the exclusionary clause in question. Although the exclusion clause becomes operative only when a specific intent to harm is demonstrated, the intent with which tort liability is concerned is not necessarily a hostile intent, or a desire to do any harm, but rather an intent to bring about a result which will invade the interests of another in a way that the law will not sanction. (Prosser, Handbook of the Law of Torts, § 8, at 31 (4th ed. 1971)). Accordingly, the gist of the action for battery is not the hostile intent of the defendant, but rather the absence of consent to the contact on the part of the plaintiff. (Prosser, *supra,* § 9, at 36). Moreover, when an action for assault and battery is defended on the ground of self-defense, the issue of defendant's "intent" may take on additional considerations. See *Gray v. Zurich Insurance Co., supra; Brasseaux v. Girouard* (La. App.), 269 So.2d 590.

In *Gray,* the court addressed itself to an insurer's duty to defend, under an exclusionary clause similar to the present one, an action brought on assault and battery and defended on a theory of self-defense. The court noted that the insured "might have been able to show that in physically defending himself, even if he exceeded the reasonable bounds of self-defense, he did not commit wilful and intended injury, but engaged only in nonintentional tortious conduct." 65 Cal. 2d at 277, 54 Cal. Rptr. at 113, 419 P.2d at 177.

■■ The rationale of the statement in *Gray* is explained in *Brasseaux.* Under Louisiana's direct action statute, plaintiff brought an action to recover from defendant and his liability insurer for injuries sustained when he was shot by defendant. Liability was denied on the ground of self-defense. Upon a review of the facts, the court originally held that defendant was not justified in using a dangerous weapon in self-defense, and was liable to plaintiff for damages. It further held that the injuries sustained by plaintiff were not intentionally caused by the insured within the meaning of the exclusionary clause, and hence the insurer was liable. Citing Prosser, the court noted that a person, in defending

himself, may have an honest belief that he is faced with a situation calling for self-defense, when in fact, a reasonable man would not so believe. In such cases, the defendant is held liable because his evaluation of the need for action was unreasonable, and not because he intended to injure the plaintiff. On rehearing, the court re-evaluated the evidence and held that the defendant "pulled the trigger with the specific intent of inflicting bodily harm on plaintiff." Although from a reading of the decision on rehearing, it is not entirely clear whether the court changed its position on the law, or merely its application to the record before it, we find the reasoning of the earlier opinion persuasive in that situations may arise in which a defendant may not substantiate his claim of self-defense, and yet, for purposes of determining insurance coverage, it may be found that the harm was unintended. (See dissenting opinion on rehearing, 269 So.2d at 601.) Thus, because the basis of tort liability is dissimilar from the issue posed by the exclusionary language, the question of whether the insured specifically intended to cause injury to a third party does not necessarily formulate an issue which is resolved in the tort litigation.

In the instant case, the question of whether this court can decide whether the Graw-Cowan litigation necessarily adjudicated the issue of whether Cowan committed an act with the specific intent to cause injury must be determined by the complaint in that action and selected instructions, for we are without the benefit of the report of proceedings of the Graw-Cowan matter. The complaint alleged a wilful and malicious assault, sought a finding that malice was the gist of the action, and prayed an award of exemplary damages. The instruction concerning punitive damages provided, *inter alia:*

> "And in case the jury believe from the evidence that the assault was *wanton, reckless* or *vicious,* and uncalled for in character, then the jury may add to such damages, if any such you find, such a sum as they may believe from the evidence would be reasonable and just as smart money or punishment." (Emphasis added.)

██ Although the emphasized words are in the disjunctive, the verdict form affirmatively discloses that no exemplary damages were awarded.[4]

---

[4] Plaintiff argues that since the jury failed to award exemplary damages, defendant should be collaterally estopped from asserting that the injury was intentional. The award of punitive damages, however, was ultimately discretionary with the jury and its absence does not, as plaintiff argues, necessarily lead to the conclusion that the injury was unintentional. Moreover, even assuming we accept plaintiff's notion, it does not follow that defendant is collaterally estopped from proving that the claim is contrary to the contract of insurance. For in an action based upon assault and battery, the injury may be either specifically intended or merely the

Furthermore, no special interrogatory as to whether "malice is the gist of the action" was submitted. We are left with the allegations of the complaint which charge a "wilful and malicious assault"; yet the only instruction which attempts to define the character of the insured's alleged conduct is the following instruction on wilful and wanton conduct:

"When I use the expression 'wilful and wanton conduct' I mean a course of action which shows actual or deliberate intention to harm *or* which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others." (Emphasis added)

Since the instruction is in the disjunctive, it cannot be presumed that the jury necessarily decided the issue of an intentional injury, for, as earlier noted, an adjudication that an insured acted with a conscious disregard for the safety of others, is not equivalent to a showing that one acted with a specific intent to harm a third party. *American Insurance Co. v. Saulnier, supra; Crull v. Gleb, supra.*

■■ It is well-settled that in order for a previous adjudication to be conclusive, it must appear clearly and certainly that the identical and precise issue was decided in the former action. If it appears that several distinct issues may have been before the court in the first action, and there is no clear indication on which of them judgment was rendered, the estoppel will not be applied, for the reason that the court may have decided on one of the other issues. (I.L.P. *Judgments* § 381 (1956). The burden of establishing a defense of estoppel by verdict is on the party who invokes it. (I.L.P. *Judgments,* § 434 (1956). From the proofs submitted by defendant, and the respective arguments of counsel thereon, we cannot say that issue of whether Cowan specifically intended to harm Graw was necessarily adjudicated. Accordingly, the parties are not collaterally estopped from litigating whether Cowan's conduct fell within the meaning of the exclusionary clause.

■■ The issue before this court is whether summary judgment should have been granted by the circuit court. To resolve this question we must look to the record before this court and the principles of law set forth in our opinion. We think the premier issue of fact, whether Cowan acted with the intent to harm Graw was still a disputed issue of fact. That it was still disputed is evident from the contentions of the parties before this court as to the effect of certain trial actions in, and the interpretation of, the initial tort action. Therefore, the question of whether Graw's re-

---

unintended result of an intentional act. In the latter case the insurer is bound to indemnify, but not in the former. In this sense, there is no identity of interests in the defense of the assault and battery action, and the reasoning of the *Hammer* decision is fully applicable. However, the estoppel in such cases is not necessarily mutual, and, for reasons further explained, we do not rest our decision on this point.

sultant injury was intentionally inflicted and therefore precluded from coverage, was not properly subject to resolution, based on this record, by means of a summary judgment.

Although not so presented, plaintiff presents what we perceive to be an alternative argument to the contention that defendant is collaterally estopped from denying an unintentional injury. Plaintiff alleges that he was defended in the prior litigation by a law firm selected and paid for by the defendant, and that it thereupon became the duty of defendant to protect and adjudicate the issue of whether there was an "intentional injury." Plaintiff asserts that defendant breached this duty by failing to submit a special interrogatory as to whether "malice is the gist of the action," and argues that the "ambiguities" in the Graw-Cowan litigation resulted from defendant's failure to "clarify" this important issue. Because defendant's inaction was detrimental to plaintiff, plaintiff contends that defendant should be estopped.

Defendant responds by alleging that plaintiff did not object to the reservation of rights or the defense of the earlier action, and made no attempt to have a personal attorney present; therefore, he should not now be heard to complain.

The contentions of the parties touch once again upon the dilemma of the insurer who must decide upon a course of action in a claim against the insured to which there may be a policy defense. This is especially true when the existence of a policy defense may turn upon facts to be determined in the tort action.

■■■ In defending an action against the insured when the existence of a policy defense may turn upon facts to be determined in that litigation, the insurer must act openly and with the utmost loyalty to its insured both in initially explaining the insurer's position in the matter and in the actual defense of the tort litigation. In the first instance, it is important that the insurer adequately inform the insured of the rights which it intends to reserve; for it is only when the insured is adequately informed of the potential policy defense that he can intelligently choose between retaining his own counsel or accepting the tender of defense counsel from the insurer. Accordingly, bare notice of a reservation of rights is insufficient unless it makes specific reference to the policy defense which may ultimately be asserted and to the potential conflict of interest. (See *Meirthew v. Last,* 376 Mich. 33, 135 N.W.2d 353.) If the insurer has adequately informed the insured of its position, and the insured accepts the tender of defense counsel, the insurer has not breached its duty of loyalty and is not equitably estopped from denying its obligation to indemnify. (See *Meirthew v. Last, supra.*) It remains bound, however, both ethically and legally, to protect the interests of the in-

sured in the defense of the tort claim. The latter obligation is separate and distinct from the insurer's duty to inform the insured of its position, and is not waived, as defendant's argument suggests, by mere acquiescence to the conduct of the insurer. However, looking to the substance of plaintiff's argument, we find it to be without merit.

In the tort litigation, although the complaint sought a finding that "malice was the gist of the action," the plaintiff in that action, Graw, failed to submit the special interrogatory to the jury. It is plaintiff's argument that upon Graw's failure to do so, it became the obligation of the defendant to submit the interrogatory. We note however, that had defendant submitted the interrogatory, there existed the possibility that the jury would return the interrogatory in the affirmative, thus resulting in a higher degree of the insured's culpability. Clearly, the breach of duty would have lain in the act, not the omission.

It is our opinion the facts and question raised by virtue of the Graw-Cowan incident, together with the language of the exclusion clause in the contract of insurance, clearly could have been more expeditiously and equitably resolved by means of the early filing of a declaratory judgment action. *Apex Mutual Insurance Co. v. Christner, supra,* suggests such a course of action. The facts here present a possible conflict of interest between the insured and insurer under the policy. There is also an obvious professional conflict under the facts in this case for an attorney representing an insurance company to also represent an insured. This conflict the organized bar should strive to avoid.

■■ When an insurer becomes aware of the existence of such possible conflict it should immediately file a declaratory judgment action joining, as in this case, both Graw and Cowan as co-defendants. In this manner these conflicts are ventilated in a proper judicial environment thereby preserving the integrity of the insurance policy as well as the attorneys who find themselves in such a distasteful situation.

In light of the foregoing, the judgment is reversed and remanded with directions that the cause be set for trial in accordance with the views expressed herein.

Reversed and remanded.

LEIGHTON and DOWNING, JJ., concur.