**Sue Ann SIEBER, Administrator of the Estate of Robert Sieber, Deceased, Plaintiff,**

**v.**

**David WIGDAHL, Defendant.**

**No. 86 C 5936.**

United States District Court, N.D. Illinois, E.D.

Jan. 17, 1989.

James K. Toohey, Ross & Hardies, Chicago, Ill., Mitchell B. Goldberg, Strauss & Troy, Cinncinnati, Ohio, for plaintiff.

Joel N. Shapiro, Dean A. Dickie, Steven H. Cohen, Charles J. Ryan, Jr., Sachnoff, Weaver & Rubenstein, Ltd., Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

ROVNER, District Judge.

### I. INTRODUCTION

This is a wrongful death action brought by Sue Ann Sieber, the administrator of Robert Sieber's estate, to recover for a fatal injury sustained by Robert Sieber from a collision with defendant David Wig-

dahl during a polo game. Jurisdiction is predicated on diversity of citizenship. Discovery has been completed. Presently before the Court are defendant's motion for summary judgment and both parties' motions in limine. For the reasons described below, defendant's motion for summary judgment is denied and the motions in limine are granted in part and denied in part.

## II. FACTS

Polo is a fast-paced, sometimes dangerous sport. Collisions and falls are not uncommon, and it is within the rules to ride into another player's side to force him away from the ball. On August 22, 1984, a polo match took place between two teams known as Three Oaks and Dahlwood. The members of the Three Oaks team were Robert Sieber, his brother Jake Sieber, Michael Sparks and Bill Ylvisaker. The members of the Dahlwood team were defendant David Wigdahl, his father Tom Wigdahl, John Kuhn and Dick Kuhn. The game was officiated by umpires Stuart Mackenzie and Brett Kiely and referee Michael Butler.

At one point during the third chukker,[1] Robert Sieber, David Wigdahl, and Dick Kuhn were all riding their horses toward the ball. Wigdahl called "leave it" to Kuhn, his teammate, signalling that Wigdahl believed he had a better shot at the ball. Kuhn accordingly pulled up in deference to Wigdahl. Wigdahl continued riding in the direction of the ball, and his horse hit Sieber's horse behind the saddle. Sieber's horse fell, and Sieber's head struck the ground. Sieber lost consciousness, and he died two days later.

Plaintiff's initial complaint was brought in six counts. On March 10, 1987, the Court dismissed Counts II, IV and VI, which sought punitive damages based on the Illinois Survival Act and Wrongful Death Act, because Illinois courts had clearly rejectd recovery of punitive damages in such actions. The Court also dismissed Count I, which alleged a claim under the Survival Act, because it was not brought by the executor or administrator of the decedent's estate. The remaining

two counts survive as Counts I and II of plaintiff's two-count second amended complaint. Count I is brought for "wrongful death—intentional tort," and Count II, which is nearly identical, is brought for "wrongful death—wilful and wanton misconduct." In its March 10, 1987 opinion, the Court denied defendant's motion to dismiss one of these two counts as duplicative. The Court noted that plaintiff merely alleges alternative states of mind for the same alleged conduct and pointed out that Fed.R. Civ.P. 8(e)(2) permits alternative pleading.

## III. THE STANDARD FOR RECOVERY

■ In their briefs relating to defendant's summary judgment motion, both parties assume that the standard for recovery applicable to Count I is different than that applicable to Count II. The parties agree that Count II is governed by the standard announced in *Nabozny v. Barnhill*, 31 Ill. App.3d 212, 334 N.E.2d 258 (1st Dist.1975), pursuant to which a defendant is liable for injuries sustained due to the defendant's violation of a safety rule in a contact sport "if his conduct is such that it is either deliberate, wilful or with a reckless disregard for the safety of the other player." 31 Ill.App.3d at 215, 334 N.E.2d at 261. *See also Oswald v. Township High School Dist. No. 214*, 84 Ill.App.3d 723, 40 Ill.Dec. 456, 406 N.E.2d 157 (1st Dist.1980).

With respect to Count I, the intentional tort count, the parties agree that the applicable standard is contained in *Cowan v. Insurance Company of North America*, 22 Ill.App.3d 883, 318 N.E.2d 315 (1st Dist. 1974). However, the parties disagree over the nature of that standard. Defendant argues that plaintiff must prove that defendant intended to cause harm to Sieber, and plaintiff argues that it is only necessary to prove that defendant intended the act itself. The parties' disagreement is understandable, as is their difficulty in supporting their arguments, because both parties erroneously assume that Count I alleg-

1. A polo match is divided into six periods known as "chukkers."

es a substantively distinct tort from that alleged in Count II.

*Cowan* involved a claim that an insurance company was obligated to satisfy an outstanding judgment entered against the plaintiff in a previous lawsuit based on assault and battery. The insurance company contended that the incident fell within the policy's exclusion for intentional torts. In its discussion of the scope of the exclusion, the court stated:

> Precedent to a determination of the issues actually adjudicated in the [previous] litigation, we think it appropriate to note some general observations on the nature of assault and battery and self-defense, and their relationship to the exclusionary clause in question. Although the exclusion clause becomes operative only when a specific intent to harm is demonstrated, the intent with which tort liability is concerned is not necessarily a hostile intent, or a desire to do any harm, but rather an intent to bring about a result which will invade the interests of another in a way that the law will not sanction. (Prosser, Law of Torts, § 8, p. 31.) Accordingly, the gist of the action for battery is not the hostile intent of the defendant, but rather the absence of consent to the contact on the part of the plaintiff. (Prosser, § 9, p. 36.)

22 Ill.App.3d at 893, 318 N.E.2d at 323. *Cowan* did not describe a distinct tort of "intentional tort," but merely discussed the nature of intent as it relates to the torts of assault and battery. Furthermore, the court specifically stated that intent was not "the gist of the action for battery." *Id.*

Thus the court's discussion of intent must be viewed not in a vacuum but as it relates to the scienter element of a specific tort such as battery.

In this case, the standard of tort recovery in the context of a contact sport such as polo is well established. As stated in *Nabozny*, plaintiff must prove that defendant acted "either deliberate[ly], wilful[ly] or with a reckless disregard for the safety of the other player." 31 Ill.App.3d at 215, 234 N.E.2d at 261.[2] Plaintiff may satisfy this standard by proving that defendant acted with intent, as alleged in Count I, or that defendant acted wilfully and in wanton disregard of Sieber's safety, as alleged in Count II. Counts I and II essentially allege the same tort, and when read together they allege that defendant is liable under the *Nabozny* standard. Indeed, Count I essentially is redundant, for intent is subsumed in the wilful and wanton misconduct count—"an action for willful and wanton misconduct requires a showing that injury was caused intentionally or under circumstances exhibiting a reckless disregard for the safety of others." *Hough v. Mooningham*, 139 Ill.App.3d 1018, 1021, 94 Ill.Dec. 404, 407, 487 N.E.2d 1281, 1284 (5th Dist. 1986), citing *Lynch v. Board of Education of Collinsville*, 82 Ill.2d 415, 429, 45 Ill. Dec. 96, 106, 412 N.E.2d 447, 457 (1980). *See also Keller v. Mols, Bernesak v. Catholic Bishops of Chicago*, 87 Ill.App.3d 681, 686, 42 Ill.Dec. 672, 676, 409 N.E.2d 287, 291 (1st Dist.1980). The Court, therefore, shall treat the two counts as if they were combined in one count.[3]

---

**2.** In *Nabozny*, the court stated:

> [W]hen athletes are engaged in an athletic competition; all teams involved are trained and coached by knowledgeable personnel; a recognized set of rules governs the conduct of the competition; and a safety rule is contained therein which is primarily designed to protect players from serious injury, a player is then charged with a legal duty to every other player on the field to refrain from conduct proscribed by a safety rule. A reckless disregard for the safety of other players cannot be excused. To engage in such conduct is to create an intolerable and unreasonable risk of serious injury to other participants. We have carefully drawn the rule announced herein in

order to control a new field of personal injury litigation. . . .

> It is our opinion that a player is liable for injury in a tort action if his conduct is such that it is either deliberate, wilful or with reckless disregard for the safety of the other player so as to cause injury to that player, the same being a question of fact to be decided by a jury.

31 Ill.App.3d at 2215, 334 N.E.2d at 260–61.

**3.** Because proof of reckless disregard is sufficient to satisfy the *Nabozny* standard, plaintiff need not prove intent in order to prevail. It is perhaps unnecessary, therefore, to reach the question of whether intent includes intent to harm. It is clear, however, in Illinois that intent need not include intent to harm. As stated

## IV. SUMMARY JUDGMENT

Summary judgment is warranted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The question raised by defendant's summary judgment motion is whether there exists a genuine dispute over the factual issue of defendant's state of mind. Defendant contends that plaintiff has produced insufficient evidence that defendant acted deliberately, wilfully or with reckless disregard for plaintiff's safety to enable plaintiff to present a case to the jury.

Where, as here, plaintiff bears the burden of proof, a defendant who moves for summary judgment on the basis that there is no genuine issue of material fact need not produce evidence showing the absence of a genuine issue. *Celotex v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2554, 91 L.Ed. 2d 265 (1986). Once defendant points out the absence of a genuine issue, it becomes plaintiff's burden to present sufficient admissible evidence to demonstrate the existence of a jury question. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986), quoting *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288–89, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968); *Toro Co. v. Krouse, Kern & Co.*, 827 F.2d 155, 162–63 (7th Cir.1987). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247–48, 106 S.Ct. at 2510 (emphases in original). Thus plaintiff "must do more than simply show

that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed. 2d 538 (1986). Plaintiff must produce sufficient evidence to allow a reasonable jury to return a verdict in her favor. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. In determining whether plaintiff has met this standard, the Court does not weigh the evidence or make credibility determination. *See Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513; *Stewart v. RCA Corp.*, 790 F.2d 624, 629 (7th Cir.1986). Rather, plaintiff's evidence "is to be believed, and all justifiable inferences are to be drawn in [her] favor." *Anderson*, 477 U.S. at 254, 106 S.Ct. at 2513. It is for this reason that cases involving intent are generally inappropriate for summary judgment. *See Askew v. Bloemker*, 548 F.2d 673, 679 (7th Cir.1976). *See also Beard v. Whitley County REMC*, 840 F.2d 405, 410 (7th Cir.1988).

■ In this case, looking at the evidence in the light most favorable to plaintiff, plaintiff has produced sufficient evidence of deliberateness, wilfulness or reckless disregard to survive defendant's motion for summary judgment. It reasonably can be concluded that David Wigdahl was approaching the ball at a faster rate of speed than were Robert Sieber and Dick Kuhn.[4] Sieber and Kuhn were approaching the ball from close to the line in which the ball had traveled,[5] perhaps as much as 20 to 30 degrees to the left.[6] Wigdahl was approaching the ball from the right, at a greater angle than Sieber and Kuhn.[7] Wigdahl called "leave it" to Dick Kuhn, his teammate, who then rode upfield past the

in *Cowan*, "the intent with which tort liability is concerned is not necessarily a hostile intent, or a desire to do any harm...." 22 Ill.App.3d at 893, 318 N.E.2d at 323. *See also Bernesak v. Catholic Bishop of Chicago*, 87 Ill.App.3d 681, 688, 42 Ill.Dec. 672, 677, 409 N.E.2d 287, 292 (1st Dist.1980) (tort of battery "carries with it neither malice nor intent to commit bodily harm"). The Court also notes that bad motive is not in itself a tort. *Aaron v. Dausch*, 313 Ill. App. 524, 533, 40 N.E.2d 805 (1st Dist.1942);

*Dean v. Kirkland*, 301 Ill.App. 495, 23 N.E.2d 180, 185 (1st Dist.1939).

**4.** MacKenzie Dep. at 31–32.

**5.** A critical rule in polo is the right of way, which is established by the line in which the ball is traveling or has traveled.

**6.** MacKenzie Dep. at 29.

**7.** Butler Dep. at 37.

ball.[8] Sieber attempted to follow Kuhn.[9] Wigdahl raised his mallet, an action used by some players to request that the officials call a foul, although such a request is not permitted by the rules.[10]

As Wigdahl approached the ball, he had a clear view of the playing field and was in a position where he was able to see Sieber.[11] By raising his mallet, he apparently requested a foul to be called on Sieber,[12] and it can be inferred, therefore, that he did see Sieber. Wigdahl testified that he thought Sieber had crossed the line of the ball.[13] Although Wigdahl was approaching the ball from the right, and could have taken a backhand shot from the left side of his horse, he chose to cross the line of the ball to position himself for a stronger forehand shot from the right side of his horse.[14] He made no attempt to avoid running into Sieber, although he had an opportunity to take evasive action.[15]

While his mallet was still raised, Wigdahl collided with Sieber.[16] Wigdahl's horse struck the rear end and hind legs of Sieber's horse behind the saddle.[17] Wigdahl knew that this is a very unstable point and is thus the most dangerous place for a horse to be hit.[18] Sieber's horse stumbled and started to recover, but Wigdahl kept on riding despite an opportunity to pull away. Wigdahl's horse thus hit Sieber's horse a second time, knocking it down and causing Sieber's head to strike the ground.[19] In the view of witnesses, Wigdahl's actions were not legal and constituted a foul.[20] Sieber, in contrast, did not commit a foul.[21]

Based on this evidence, described in the light most favorable to plaintiff, a jury reasonably could conclude that defendant's action was deliberate, wilful or taken with reckless disregard for Sieber's safety. The jury could find that defendant saw the play developing, saw Sieber approaching the ball, and deliberately rode into Sieber's horse in an attempt to knock the horse over. That defendant's actions may have been taken only in the pursuit of a competitive advantage does not, as defendant argues, mandate denial of recovery. Bad motive is not an element of plaintiff's claim, and a similar desire for competitive advantage was presumably the motive in *Nabozny*, where the court reversed a directed verdict for the defendant.

Defendant also cites deposition testimony that there was no "bad blood" between Sieber and Wigdahl, that Wigdahl did not intend to harm Sieber, that Wigdahl did not see the play developing, and that Wigdahl did not have an opportunity to avoid the accident. This evidence, if believed, could lead to the conclusion that defendant did not act deliberately, wilfully or with reckless disregard. However, this evidence is not conclusive, and plaintiff's contrary evidence must be taken as true for purposes of this motion.

Defendant further argues that only two witnesses—Jake Sieber and Michael Sparks—support plaintiff's position, and that these witnesses are not credible because they are biased and their testimony consists of factually unsupported conclusions. Although these two witnesses are central to plaintiff's case, they are not the sole evidence in support of plaintiff's position.

**8.** J. Sieber Dep. at 128.

**9.** J. Sieber Dep. at 128.

**10.** J. Sieber Dep. at 139–40; Butler Dep. at 35.

**11.** D. Wigdahl Dep. at 219, 246, 247; MacKenzie Dep. at 102, 104; Butler Dep. at 40; Kiely Dep. at 56; J. Sieber Dep. at 138–39.

**12.** J. Sieber Dep. at 139–40.

**13.** D. Wigdahl Dep. at 244.

**14.** MacKenzie Dep. at 36–37; Kiely Dep. at 59, 61; D. Wigdahl Dep. at 158.

**15.** MacKenzie Dep. at 46–48; Kiely Dep. at 58–59, 69; Sparks Dep. at 183–84.

**16.** Butler Dep. at 88.

**17.** J. Sieber Dep. at 137–38; Butler Dep. at 247.

**18.** D. Wigdahl Dep. at 203.

**19.** Sparks Dep. at 183–84.

**20.** MacKenzie Dep. at 34, 36, 105; Kiely Dep. at 45–46; Butler Dep. at 41, 89–91.

**21.** Butler Dep. at 48; Kiely Dep. at 45.

The testimony of other witnesses, in particular the three officials, lends support to plaintiff as well. Furthermore, the testimony of Sparks and Sieber does contain specific facts which support their conclusions with respect to defendant's state of mind. Finally, even though Sparks and Sieber may be subject to allegations of bias, their testimony is not so unbelievable as to allow the Court to usurp the jury's function as the judge of credibility.

For these reasons, defendant's motion for summary judgment is denied.

## V. MOTIONS IN LIMINE

### A. Questionnaires

■ During a meeting in late December, 1984, Jake Sieber discussed the accident with the three officials (Michael Butler, Stuart MacKenzie and Brett Kiely). He revealed to them that he was considering litigation against the manufacturer of the helmet that Robert Sieber had been wearing. In January, 1985, at Jake Sieber's request, each of the officials completed a questionnaire concerning the accident. Defendant seeks a ruling that these questionnaires are inadmissible hearsay. Plaintiff does not dispute that the completed questionnaires constitute hearsay, but she argues that they should be admitted pursuant to Federal Rule of Evidence 803(5), the past recollection recorded exception to the hearsay rule.

The parties focus their arguments on two aspects of the past recollection recorded exception—the requirement that the witness now has insufficient recollection to enable him to testify fully and accurately, and the requirement that the document accurately reflect the witness's knowledge at the time the record was made. The officials have each given deposition testimony at which they exhibited varying degrees of recollection of the accident. Neither party has informed the court whether these officials will be called as witnesses at trial, although both parties have included the officials in their lists of possible or definite trial witnesses submitted as part of a joint pretrial order.

Because the past recollection recorded exception is part of Rule 803 rather than Rule 804, the declarant need not be unavailable for it to apply. A question which neither party has addressed, however, is whether the exception applies in an instance where the declarant is available. In the usual circumstances, the witness's inability to sufficiently recollect the incident will be apparent from his in-court testimony. The normal procedure is then to use the document in an attempt to refresh the witness's recollection. If such an attempt is unsuccessful, the witness may read the document itself as a past recollection recorded, provided the witness establishes that he made or adopted it when the matter was fresh in his memory and that it correctly reflects his prior knowledge. The party eliciting this testimony may not introduce the actual record in evidence, although the opposing party may do so.

The difficulty with attempting to establish the admissibility of such a record without the declarant's presence is demonstrated by the parties' inability to agree on whether the officials' deposition testimony has satisfied the requirements of Rule 803. This difficulty lends additional support to the conclusion in *Zenith Radio Corp. v. Matsushita Electric Industrial Co.*, 505 F.Supp. 1190 (E.D.Pa.1980), that the language of Rule 803 itself indicates that it applies only where the declarant testifies as a witness at trial. As the *Zenith* court pointed out, Rule 803 generally uses the term "declarant" to refer to the person whose statement is in question. Rule 803(5), however, uses the term "witness" instead. 505 F.Supp. at 1228–29 n. 48. Based on this language and the inherent difficulties in applying Rule 803(5) where the declarant does not testify, this Court agrees with the conclusion in *Zenith* that Rule 803(5) is generally limited to instances where the declarant is present and testifies.

In the event that the officials are called at trial, the Court will address the Rule 803(5) issue at the time the problem arises. The witnesses' live testimony will then be used to determine whether the requirements of Rule 803(5) are satisfied. If testi-

mony by the officials is not presented, Rule 803(5) will not permit the introduction of the records in evidence. An intermediate situation may well arise in this case, however, as there is a possibility that the officials' deposition testimony will be presented in lieu of their live testimony. *See* Fed. R.Civ.P. 32. In that situation, references to the questionnaires in the deposition testimony itself will be treated the same as live testimony would be treated. Questions concerning the questionnaires will be evaluated on a question-by-question basis. If the deposition testimony establishes that, at the time of the deposition, the requirements of Rule 803(5) were satisfied with respect to a specific instance of the deponent reading from the questionnaire, then Rule 803(5) will apply just as it would were the official testifying in court. The Court sees no need, however, to engage in such a question-by-question analysis at this time in light of the uncertainty as to whether the officials will testify at trial.[22]

### B. Character Evidence

Defendant also seeks to exclude evidence of his aggressive style of polo playing and evidence of specific instances where he may have been involved in collisions during polo games. He argues that such evidence should be excluded as irrelevant pursuant to F.R.E. 404. Plaintiff argues that the evidence of defendant's style of playing is admissible because it is relevant to intent and the absence of mistake or accident on defendant's part and that evidence of specific instances is evidence of habit admissible pursuant to F.R.E. 406.

■ The evidence which concerns defendant's general style of play rather than specific instances of aggressive play can be disposed of readily. Rule 404(a) provides

that "[e]vidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion." Although Rule 404(a) provides three exceptions to this general rule, plaintiff does not contend that any of them apply in this case. (Plaintiff relies only on Rule 404(b), which applies only to specific instances, and Rule 406, which is inapplicable for reasons described below.) Pursuant to Rule 404(a), therefore, the Court will exclude evidence of defendant's general style of play. This evidence includes testimony that his style of play was "reckless" or "dangerous," that he played without regard for the safety of other players, or that he was an unorthodox player who cared more about hitting the ball and making a flashy play than about teamwork.[23]

The testimony that defendant once said his style of play was a "scare factor" that was good for a couple of extra goals[24] is inadmissible for the same reason. This testimony would essentially constitute an admission by defendant that his style of play was rough, the inference being that he intended to play unnecessarily rough on this particular occasion. That is precisely the type of inference forbidden by Rule 404(a).

Rule 404(a) further precludes admission of the letter sent by the United States Polo Association to defendant and several other polo players in 1978 expressing concern over their style of play. The letter states in part:

At the last Board of Governors meeting in May, your name was brought up, and it was agreed that you should receive such a warning. This is in no way reflective of any single incident or indicative of

---

**22.** Plaintiff argues that if the questionnaires are not admissible pursuant to Rule 803(5), they should be admitted pursuant to Rule 803(24), the catch-all hearsay exception. Although the Court defers ruling on this issue for the same reasons it defers ruling on the rule 803(5) issue, only in the most exceptional circumstances is it inclined to admit evidence based on the catch-all provision when the admissibility of that evidence is so clearly governed by one of the explicit hearsay exceptions. *Cf. Huff v. White Motor Corp.,* 609 F.2d 286, 291 (7th Cir.1979)

(Congress intended residual hearsay exceptions to be used only rarely and in exceptional circumstances).

**23.** *See* Sparks Dep. at 125–126, 135, 217–18; J. Sieber Dep. at 78, 95–96.

**24.** Sparks Dep. at 138–39. This alleged statement apparently referred to a specific tournament.

bad sportsmanship. It does mean that your general style of playing is considered unduly dangerous and could potentially result in a serious accident.

This letter, as it states on its face, does not relate to a specific instance. It is, rather, a reflection that certain individuals believed defendant's style of play was dangerous. It is thus (hearsay) evidence of defendant's general character and is not admissible to show the recklessness of defendant's action in this particular incident. Plaintiff attempts to circumvent this problem by maintaining that the letter is relevant to show defendant's state of mind. The letter, it is argued, establishes that defendant knew that his aggressive style of playing was dangerous. Although that may be the case, it is only another way of stating that defendant had a character trait of intentionally playing dangerously. Rule 404(a) excludes the use of such evidence to show that defendant intentionally played dangerously on this particular occasion.[25]

■ Evidence of specific instances of dangerous play by defendant is governed by Rule 404(b). The Seventh Circuit has consistently set forth a four-part test for determining the admissibility of such evidence:

> [A]dmission of evidence of prior or subsequent acts will be approved if (1) the evidence is directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged, (2) the evidence shows that the other act is similar enough in time to be relevant to the matter in issue ..., (3) the evidence is clear and convincing, and (4) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice.

*United States v. Shackleford*, 738 F.2d 776, 779 (7th Cir.1984). The third prong of this test has subsequently been altered by the Supreme Court, which held that the "evidence should be admitted if there is sufficient evidence to support a finding by the jury that the defendant committed the similar act." *Huddleston v. United States*, — U.S. —, 108 S.Ct. 1496, 1499, 99 L.Ed.2d 771 (1988). *See United States v. Rollins*, 862 F.2d 1282 (7th Cir.1988). Although these standards have developed primarily in the context of criminal cases, they apply as well in the civil arena. *See, e.g., Young v. Rabideau*, 821 F.2d 373, 378 (7th Cir.), *cert. denied,* — U.S. —, 108 S.Ct. 263, 98 L.Ed.2d 221 (1987).

Application of these standards in this case leads to the conclusion that the evidence of specific instances should be excluded. The evidence consists of the following:

1. Testimony that defendant ran into Sparks at a ninety degree angle during a previous polo match;[26]

2. Testimony that defendant ran into a player named Benny Guitterez in the late 1970's seriously injuring Guitterez;[27]

3. Testimony that defendant collided with another player's horse behind the saddle during a match which occurred one week after Robert Sieber's death;[28]

4. Testimony that, at the same match, defendant attempted a "tail hook," an action which was dangerous although it was within the rules;[29]

5. Testimony that defendant often hooked other players' mallets in a dangerous manner;[30] and

6. Testimony that defendant recently hooked Jake Sieber's mallet in a dangerous manner.[31]

Plaintiff has not specified how he plans to introduce this evidence, and much of it has been identified to the court only through

---

**25.** Defendant has also moved to exclude testimony by various witnesses concerning whether defendant ever used drugs. Plaintiff has not responded to this argument, and the Court sees no relevance for this testimony. Such evidence will therefore be excluded.

**26.** Sparks Dep. at 131–33.

**27.** J. Sieber Dep. at 101–02.

**28.** MacKenzie Dep. at 57–58.

**29.** MacKenzie Dep. at 57.

**30.** J. Sieber Dep. at 97.

**31.** J. Sieber Dep. at 97–98.

the use of hearsay. With respect to such hearsay evidence, the third prong has not been satisfied.

More importantly, with the possible exception of number four, none of the evidence has been shown to be uniquely similar to the conduct involved in this case. Because polo is a dangerous sport in which collisions are not uncommon, the similarity requirement is particularly important in this case. Even with respect to number four, involving a somewhat similar collision, plaintiff has presented little evidence tending to show that defendant's actions were purposeful. *Cf. United States v. Bettencourt*, 614 F.2d 214, 218 (9th Cir.1980) (because intent was never proved with respect to prior assault, that assault did not support an inference of intent with respect to assault at issue). The probativeness of the list of specific instances on the issue of defendant's state of mind in the incident in question stems solely from its cumulative effect. Evidence that the defendant has frequently been involved in dangerous play leads to the inference that he is an intentionally dangerous or reckless player, which leads to the inference that he was intentionally dangerous or reckless in this instance. Thus the evidence relies on inferences concerning defendant's general character in order to make the desired point. For these reasons, the Court finds that the first, second and fourth requirements for admissibility pursuant to Rule 404(b) have not been satisfied.

The reason for plaintiff's inability to satisfy the requirements for Rule 404(b) admissibility stem in part from the very nature of the act in question. Because this case involves spontaneous conduct, it is very difficult to rely on other specific instances to establish defendant's state of mind on this particular occasion. It is for that reason that the Fifth and Ninth Circuits have held, and this Court agrees, that evidence of other acts is often so lacking in probative value as to be inadmissible on issues of state of mind where such spontaneous acts are involved. *See United States v. Bettencourt*, 614 F.2d 214, 217 (9th Cir.1980); *United States v. San Martin*, 505 F.2d 918, 923 (5th Cir.1974).

█ Plaintiff's argument that the evidence of specific instances is relevant as habit evidence pursuant to Rule 406 fares no better. Rule 406 provides that "[e]vidence of the habit of a person ... is relevant to prove that the conduct of the person ... on a particular occasion was in conformity with the habit...." As the language of the rule makes clear, habit evidence is relevant to show *conduct* in conformity with the habit; it does not provide that habit evidence is relevant as to state of mind. Indeed, habit evidence is inconsistent with an attempt to show that defendant acted purposefully, because evidence may only be admitted as habit evidence if plaintiff establishes "the degree of specificity and frequency of uniform response that ensures more than a mere 'tendency' to act in a given manner, but rather, conduct that is 'semi-automatic' in nature." *Simplex, Inc. v. Diversified Energy Systems, Inc.*, 847 F.2d 1290, 1293 (7th Cir.1988). If the specific instances are of a "semi-automatic" nature, they are less likely to be probative of state of mind.

Here, defendant does not dispute that his horse collided with Robert Sieber's horse. It is thus unnecessary to introduce any habit of colliding with other riders in order to prove that defendant acted in conformity with any such habit. Furthermore, plaintiff simply has not demonstrated the requisite "specificity and frequency of uniform response," or "specific, particularized conduct capable of almost identical repetition," to establish the existence of a habit in the first place. *Simplex*, 847 F.2d at 1293–94. To admit the evidence pursuant to Rule 406 in this case raises the very danger against which the Seventh Circuit warned in *Simplex*:

> We are cautious in permitting the admission of habit or pattern-of-conduct evidence under Rule 406 because it necessarily engenders the very real possibility that such evidence will be used to establish a party's propensity to act in conformity with its general character, thereby thwarting Rule 404's prohibition against the use of character evidence except for narrowly prescribed purposes.

*Id.* at 1293. The Court finds the offered evidence inadmissible as habit evidence because the nature of defendant's conduct (as opposed to his state of mind) is not in issue and because plaintiff has not shown that the specific instances constitute a habit.

## C. Opinion Evidence

■ Plaintiff seeks to ensure that any opinion evidence by lay witnesses, particularly any evidence concerning witnesses' opinions concerning whether defendant acted intentionally, be admitted only pursuant to the laying of a proper foundation pursuant to F.R.E. 701. It is not clear what type of ruling plaintiff seeks. On its face, her motion simply requests assurances that Rule 701 will be followed at trial. No party need file a motion, however, in order to confirm the application of a rule of evidence. Plaintiff further requests that "all parties be required to phrase their questions so that it is clear that the witness's opinion is 'rationally based on the perception of the witness'" as required by Rule 701. The Court declines to enter a pre-trial ruling concerning the manner in which counsel must phrase their questions at trial.

■ Although plaintiff does not direct her motion at the exclusion of any particular evidence, her concerns are apparent from the examples she uses to demonstrate her fear that defendant will elicit testimony which does not comply with Rule 701. A typical example is MacKenzie's deposition testimony that he did not feel that defendant acted intentionally, an opinion which may have been based solely on a belief that no polo player would intentionally ride into another.[32] Because plaintiff has not moved to exclude any specific testimony, and because the Court does not know how the testimony will be developed at trial, it will not make any evidentiary rulings with respect to Rule 701 at this time. Clearly, however, an opinion that is based not on observations of the incident in question but rather on a preconceived opinion unaffect-

ed by the particular evidence would not qualify as admissible opinion evidence pursuant to Rule 701.[33]

## D. Helmet Lawsuit

■ Before this lawsuit was filed, plaintiff filed a product liability lawsuit in California against the manufacturer of the helmet which Sieber wore at the time of the collision. That lawsuit is still pending. Plaintiff seeks to preclude defendant from introducing evidence of the helmet lawsuit in this action.

Defendant argues that the helmet lawsuit is relevant for two reasons. First, he claims it is relevant to the issues of whether the helmet was defective or damaged and whether such defect or damage was the sole, or a contributing, proximate cause of Robert Sieber's injury. Initially, the Court doubts that the existence of the helmet lawsuit is relevant to the condition of the helmet. Although evidence gathered in connection with the lawsuit may have such relevance, the existence of the lawsuit itself is relevant only to plaintiff's own belief that the helmet was defective or damaged.

Furthermore, the possibility that the helmet's condition may have been a contributing cause does not affect defendant's liability. There may be more than one proximate cause of an injury, and a defendant's liability is not altered because another party may also have contributed to the injury. *Lipke v. Celotex Corp.,* 153 Ill.App.3d 498, 509, 106 Ill.Dec. 422, 430, 505 N.E.2d 1213, 1221 (1st Dist.1987), *leave to appeal granted,* 115 Ill.2d 542, 110 Ill.Dec. 457, 511 N.E.2d 429 (1987); *Sears v. Kois Brother Equipment, Inc.,* 110 Ill.App.3d 884, 889, 66 Ill.Dec. 531, 536, 443 N.E.2d 214, 219 (1st Dist.1982). Although the helmet's condition might conceivably be relevant to show that defendant's action was not a proximate cause of Sieber's injuries at all, defendant has presented no theory in support of his conclusory statement that an issue in this case is whether the helmet's

---

**32.** MacKenzie Dep. at 104–05.

**33.** Provided that the testimony otherwise meets the requirements of Rule 701, opinion evidence

will not be excluded solely because it relates to an individual's state of mind. *See Bohannan v. Pegelow,* 652 F.2d 729, 732 (7th Cir.1981).

condition was the exclusive proximate cause. The Court thus finds that the existence of the helmet lawsuit is not relevant to the proximate cause issue both because it is not probative of the helmet's condition and because the existence of a contributing proximate cause does not alter defendant's liability.

■ Defendant's second contention is that the helmet lawsuit is relevant to Jake Sieber's credibility. Jake Sieber, who is an attorney, caused the helmet lawsuit to be filed prior to this case and gave the helmet lawsuit a higher priority. In defendant's view, it was only after the helmet lawsuit became stalled that the instant action was filed. This priority given to the helmet lawsuit, defendant argues, is relevant to Jake Sieber's credibility in testifying as to his opinion that defendant's conduct was deliberate. The Court disagrees. There may be a number of reasons other than Jake Sieber's personal opinion concerning defendant's culpability which would explain any priority given to the helmet lawsuit. Such priority is not probative of Jake Sieber's credibility in this case, and it will therefore be excluded.

### E. Sieber's Prior Accident

In November, 1983, nine months before the incident at issue here, Robert Sieber fell from a horse during a polo match in California and suffered a concussion. He was wearing the same helmet at that time that he was wearing when he later collided with Wigdahl. Sieber did not repair or replace the helmet in the meantime.

Plaintiff first seeks to exclude evidence that the person who brought Sieber to the hospital for medical treatment after the earlier accident was a woman who was not his wife. Plaintiff states that the woman was a friend of the family and that the jury should not be given the opportunity to speculate as to whether Sieber and the woman were engaged in a relationship which might affect plaintiff's claim for loss of financial support, consortium and society. Defendant has not indicated an intent to seek to introduce the disputed evidence, and plaintiff's motion is therefore granted.

■ Plaintiff further seeks to exclude evidence of the prior accident altogether. Defendant maintains that the prior accident is relevant to the issue of contributory negligence, because plaintiff failed to repair or replace the helmet despite the fact that it was damaged in the fall. Plaintiff responds that Sieber's failure to repair or replace the helmet is not relevant to defendant's state of mind and does not show that Sieber "assumed the risk of death." These arguments miss the point. The defense of contributory negligence need not include evidence that defendant is not otherwise liable or that plaintiff "assumed the risk of death." In their pretrial briefs, the parties have addressed the issue of whether contributory negligence is a defense to an action predicated on wilful and wanton conduct. Illinois case law clearly holds that it is indeed a defense. *See State Farm Mutual Auto Insurance Co. v. Mendenhall,* 164 Ill.App.3d 58, 115 Ill.Dec. 139, 517 N.E.2d 341 (4th Dist.1987). Plaintiff maintains that *State Farm* does not apply to this case but provides no logic or case law in support of that position. The Court finds the *State Farm* case to be well-reasoned and to apply here.

Plaintiff further argues that the prior fall is not relevant to the issue of contributory negligence because there is no evidence that Sieber knew that the helmet needed to be repaired or replaced. Plaintiff appears to suffer from the erroneous belief that contributory negligence encompasses only intentional misconduct. On the contrary, contributory negligence is precisely what it says it is—contributory *negligence.*

Defendant, however, has not presented the court with any evidence from which the Court may determine whether the helmet was actually damaged or whether plaintiff's failure to repair or replace the helmet is actually probative of contributory negligence. If defendant has such evidence, he should present his theory of relevance to the Court in a memorandum by January 31, 1989. Plaintiff's response is due February 14, 1989, and defendant's reply is due February 24, 1989.

## VI. CONCLUSION

Plaintiff has produced sufficient evidence to allow a reasonable jury to conclude that defendant acted deliberately, wilfully or with reckless disregard for plaintiff's safety. Plaintiff thus has demonstrated the existence of a genuine issue of material fact, and defendant's motion for summary judgment is accordingly denied.[34] The motions in limine are granted in part and denied in part as described above.

---

**34.** Defendant's motion for summary judgment was not frivolous, and plaintiff's motion for sanctions is denied.