18435

Booker T. SIMS, Respondent, v. NATIONWIDE MUTUAL INSURANCE COMPANY, Appellant

(145 S. E. (2d) 523)

*Messrs. Nelson, Mullins, Grier & Scarborough,* of Columbia, *for Appellant,*

*Messrs. Hutto & Hutto,* of Columbia, *for Respondent,*

December 8, 1965.

BUSSEY, Justice.

In this action plaintiff-respondent seeks to recover from the defendant-appellant, under an automobile liability insurance policy, for a judgment previously rendered against plaintiff in an action instituted by one Moses Bates, and for attorneys' fees expended by plaintiff in the defense of said action. From a directed verdict in favor of plaintiff, defendant appeals.

The action by Bates against plaintiff arose out of a collision between plaintiff's car, insured by the defendant here, and a car driven by one Gladys Goodson in which Bates was a passenger. The insurance policy contains, *inter alia,* the following clause:

"There shall be no protection afforded * * * for injury * * * of any person * * * caused intentionally by or at the direction of"
the insured.

The defendant was notified of the collision and of the suit commenced by Bates, but denied any liability under its policy and declined to defend that action on the ground, asserted as a defense in this action, that the injury sustained by Bates was intentionally caused by its insured, the plaintiff. Thereafter, the tort action was tried before the Honorable John A. Mason, Associate Judge of the Richland County Court, without a jury, and resulted in a verdict and judgment for actual damages in favor of Bates.

Judge Mason's order, prepared by counsel in that case, contained the following language,

"* * * the defendant was negligent in passing said automobile and colliding with same, but the defendant was not willful."

Upon the trial of the instant case, at the conclusion of plaintiff's evidence, defendant sought to offer proof to the effect that its insured (the plaintiff here) was at the time of the collision deliberately and intentionally running at a speed of about 65 miles an hour; that he had three times asked his girl friend, Gladys Goodson, to stop; that she wouldn't stop; that plaintiff ran her car, in which Bates was a passenger, off the road in order to stop her, got out of his car, and got a gun and shot her. It was stated to the court by counsel that defendant had signed statements of the plaintiff to such effect. The trial court held that the defendant was precluded by the judgment in the tort action from offering proof in this action that the plaintiff intentionally caused the injuries to Bates, and directed a verdict for the plaintiff.

The question before this court is whether the trial judge erred in so ruling. Appellant concedes that, as a general rule, where an insurance company has notice and opportunity to defend an action against its insured,

the company is bound by pertinent material facts established against its insured, whether it appears in the defense of the action or not. It urges, however, that such general rule is not applicable to the facts of this case.

Simply stated, the issue is whether the insurer was bound to set up its defense of alleged intentional causation on the part of the insured, in the tort action brought against its insured, or could it refuse to defend said tort action and thereafter assert such defense in an action brought against it by its insured on the policy.

The precise issue presented by this appeal appears not to have been previously considered by this court. Admittedly, there is some authority from other jurisdictions for the proposition that a judgment in a tort action, in similar factual situations, is binding upon an insurer and that an insurer cannot thereafter avail itself of the defense that the injuries sustained by the plaintiff in the tort action were intentionally caused by the insured. It seems to us, however, that all of the well reasoned decisions reach a contrary result. It is perfectly obvious, we think, that had the insurer here undertaken to defend the insured in the tort action and asserted therein its defense that the injuries sustained by Bates were intentionally caused by its insured, a clear conflict of interests between insurer and insured would have been presented, and the insurer could not in that action have undertaken to assert its defense and at the same time defend the insured against a charge of simple negligence.

A leading case directly in point is that of *Farm Bureau Mutual Ins. Co. v. Hammer et al.,* 4th C. C. A., 177 F. (2d) 793. There the insurer denied coverage on the same ground as the insurer here, namely, that its insured intentionally caused the collision. The insured was convicted of murder in the second degree, and sentenced therefor. Civil suits were brought and tried upon the theory of negligent injury, just as here. After the rendition of judgments, predicated on negligence, the insurer sought a declaratory judgment, asserting that the insured intentitonally caused the collision.

The District Court granted summary judgment against the insurer; the Circuit Court of Appeals reversed, and the logic of the opinion therein, written by Judge Soper, is, we think, unassailable.

The opinion recognized the general principle, or rule, variously phrased by the courts, but apparently well settled, to the effect that where an indemnitor has notice of and opportunity to defend an action against the indemnittee, he is bound by material facts established against the indemnittee, whether he appeared in defense of the action or not. The court held, however, that such principle, or rule, did not apply to the factual situation there involved, pointing out the reasons why in the following language,

"The underlying purpose of the doctrine is to obviate the delay and expense of two trials upon the same issue—one by the injured party against the indemnitee and the other by the indemnitee, or the injured party against the indemnitor. This is possible because it is assumed that the interests of the parties to the contract of indemnity in opposing the injured person's claim are identical; and it is accomplished by giving the indemnitor an opportunity to appear in the first suit on behalf of the indemnitee so that everything that can be offered in exculpation of the indemnitee by either party to the indemnity contract may be presented. The indemnitor may not be under a contractual obligation to defend, but if he fails to assume the burden of the defense he takes the risk for he is bound by any judgment against the indemnittee where their interests in the defense of the suit are identical.

"It is, however, obvious that the binding effect of a judgment against the insured does not extend to matters outside the scope of the insurance contract, and that the Insurance Company is neither obligated to defend nor bound by the findings of the court if the claim against the insured is not covered by the policy. To hold otherwise would be to estop the Insurance Company by the acts of parties in a transaction in which it has no concern and over which it has no control, and to deprive it of its day in court to show that

the transaction is foreign to the contract of insurance. 'If it cannot do this,' as was said in the dissenting opinion in *Stefus v. London & Lancashire Indemnity Co.*, 111 N. J. L. 6, 166 A. 339, 341, "it is at the mercy of every unscrupulous litigant who, regardless of his facts, sees fit to falsely allege a claim on which the insurance company would be liable and thereunder establish another claim on which no liability could attach, and forsooth collect because the insurer cannot show the true facts."

"In accord is Restatement of the Law of Judgments, Section 107(a), where the rights of indemnitee and indemnitor *inter se* after judgment against one of them are set out, and it is stated that if the third person has obtained a valid judgment against the indemnitee, both indemnitor and indemnitee are bound as to the existence and extent of the liability if the indemnitor has been given reasonable notice of the action and requested to defend; but in Comment (g) it is stated that this rule is binding only as to issues relevant to the proceeding; and that the judgment against the indemnitee does not decide issues as to the existence and extent of the duty to indemnify, and that in a subsequent action the indemnitor may show that the circumstances under which he was required to give indemnity do not exist. To the same effect it is said in Freeman on Judgments, 5th Ed., § 448, that the general rule extends only to cases where the obligation to defend arises, and that this duty does not exist where the indemnitor would not be permitted to litigate matters which would determine whether an obligation on his part had arisen.

\* \* \*

"\* \* \* It is obvious that the Insurance Company was not qualified to undertake the defense of the insured in the suits by the injured parties against him, and that this disqualification was due to the insured's own conduct. It was not possible for the company in these suits to defend the insured, and at the same time to protect its own interests. It could not exculpate itself by showing that the injurious acts of the

insured were beyond the scope of the policy, for this showing would establish the liability of the insured to the injured parties to an even greater extent than that claimed in the complaints. See *Pfarr v. Standard Oil Co.,* 165 Iowa 567, 671-672, 146 N. W. 851, L. R. A. 1915C, 336."

Apropos of the situation with which the insurer here was confronted is the language of the court in *Harbin v. Assurance Co. of America,* 10th C. C. A., 308 F. (2d) 748, wherein it was said,

"The type of situation presented here places an insurer in a dilemma of conflicting interests. It cannot possibly defend the state court action and protect both its own interests and the interests of its insureds. If it tries to exculpate itself by showing an intentional injury, it exposes the insured to a greater liability and a possible award of exemplary damages. If it urges an unintentional injury, it foregoes the exclusionary provision of the policy."

The case of *Stout v. Grain Dealers' Mut. Ins. Co.,* 4th C. C. A., 307 F. (2d) 521, is another case in point. There the court in a well reasoned opinion followed and applied the principles enunciated in the earlier decision of that court in *Farm Bureau Mutual Ins. Co. v. Hammer et al., supra.*

The plaintiff relies strongly on the case of *Carolina Veneer & Lumber Co. v. American Mutual Liability Ins. Co.,* 202 S. C. 103, 24 S. E. (2d) 153. In that case it was held by this court that the insurer was concluded by the judgment in the tort action, but the case is clearly distinguishable in that there was no conflict of interests between the insurer and the insured in the tort action, their interests in that action being identically the same. There coverage depended on whether or not the injured was an employee of the insured. In holding the judgment in the tort action to be conclusive on the insurer, the court said,

"In that action the relationship of master and servant, between Hyman and plaintiff, was one of the chief questions at issue. That question, along with the issues of negligence

and the amount of Hyman's damage, was prosecuted to a final determination in the Court of Common Pleas and was resolved against plaintiff."

For the foregoing reasons, we are satisfied that there was error on the part of the trial court in excluding the proffered evidence in behalf of the defendant in support of its defense, and directing a verdict for the plaintiff. The judgment of the lower court is, accordingly, reversed and the cause remanded for a new trial.

Reversed and remanded.

TAYLOR, C. J., and Moss, LEWIS and BRAILSFORD, JJ., concur.