# The Supreme Court of South Carolina

Ex Parte:

Builders Mutual Insurance Company and Nationwide Mutual Insurance Company, Appellants,

In Re:

Palmetto Pointe at Peas Island Condominium Property Owners Association, Inc., and Jack Love, Individually, and on behalf of all others similarly situated, Plaintiffs,

v.

Island Pointe, LLC; Leonard T. Brown; Complete Building Corporation; Tri-County Roofing, Inc.; Creekside, Inc.; American Residential Services, LLC d/b/a Rescue Rooter Charleston; Andersen Windows, Inc.; Atlantic Building Construction Services, Inc. n/k/a Atlantic Construction Services, Inc.; Christopher N. Union; Builder Services Group, Inc. d/b/a Gale Contractor Services; Novus Architects, Inc. f/k/a SGM Architects, Inc.; Tallent and Sons, Inc.; WC Services, Inc., CRG Engineering, Inc.; Certainteed Corporation; Kelly Flooring Products, Inc. d/b/a Carpet Baggers and John Doe 1-60, Defendants,

Tri-County Roofing, Inc., Third-Party Plaintiff,

v.

Cornerstone Construction and Mark Malloy d/b/a Cornerstone Construction; Gutter Works, Inc. and Michael L. Segars d/b/a Gutter Works; Mr. Gutter; Litchfield Seamless Gutters & Windows, LLC and Thomas Litchfield d/b/a Litchfield Seamless Gutter; Miracle Siding, LLC and Wilson Lucas Sales d/b/a Miracle Siding, LLC; Mark Palpoint a/k/a Micah

Palpoint; Elroy Alonzo Vasquez; and Chris a/k/a John Doe 61, Third-Party Defendants.

And

Complete Building Corporation, Inc., Third-Party Plaintiff,

v.

Alderman Construction; Stanley's Vinyl Fence Designs; Cohen's Drywall; and Mosley Concrete, Third-Party Defendants,

Of Whom Palmetto Pointe at Peas Island Condominium Property Owners Association, Inc. and Jack Love, Individually, and on behalf of all others similarly situated, Tri-County Roofing, Inc., and WC Services, Inc. are the Respondents.

Appellate Case No. 2019-000238

_____

ORDER

_____

After careful consideration of Respondents' petition for rehearing, the Court grants the petition for rehearing, dispenses with further briefing, and substitutes the attached opinion for the opinion previously filed in this matter.

s/ Donald W. Beatty      C.J.

s/ John W. Kittredge      J.

s/ Kaye G. Hearn      J.

s/ John Cannon Few      J.

s/ George C. James, Jr.      J.

Columbia, South Carolina
August 12, 2020

Ex Parte:

Builders Mutual Insurance Company and Nationwide
Mutual Insurance Company, Appellants,

In Re:

Palmetto Pointe at Peas Island Condominium Property
Owners Association, Inc., and Jack Love, Individually,
and on behalf of all others similarly situated, Plaintiffs,

v.

Island Pointe, LLC; Leonard T. Brown; Complete
Building Corporation; Tri-County Roofing, Inc.;
Creekside, Inc.; American Residential Services, LLC
d/b/a Rescue Rooter Charleston; Andersen Windows,
Inc.; Atlantic Building Construction Services, Inc. n/k/a
Atlantic Construction Services, Inc.; Christopher N.
Union; Builder Services Group, Inc. d/b/a Gale
Contractor Services; Novus Architects, Inc. f/k/a SGM
Architects, Inc.; Tallent and Sons, Inc.; WC Services,
Inc., CRG Engineering, Inc.; Certainteed Corporation;
Kelly Flooring Products, Inc. d/b/a Carpet Baggers and
John Doe 1-60, Defendants,

Tri-County Roofing, Inc., Third-Party Plaintiff,

v.

Cornerstone Construction and Mark Malloy d/b/a
Cornerstone Construction; Gutter Works, Inc. and
Michael L. Segars d/b/a Gutter Works; Mr. Gutter;
Litchfield Seamless Gutters & Windows, LLC and
Thomas Litchfield d/b/a Litchfield Seamless Gutter;
Miracle Siding, LLC and Wilson Lucas Sales d/b/a

Miracle Siding, LLC; Mark Palpoint a/k/a Micah
Palpoint; Elroy Alonzo Vasquez; and Chris a/k/a John
Doe 61, Third-Party Defendants.

And

Complete Building Corporation, Inc., Third-Party
Plaintiff,

v.

Alderman Construction; Stanley's Vinyl Fence Designs;
Cohen's Drywall; and Mosley Concrete, Third-Party
Defendants,

Of Whom Palmetto Pointe at Peas Island Condominium
Property Owners Association, Inc. and Jack Love,
Individually, and on behalf of all others similarly
situated, Tri-County Roofing, Inc., and WC Services, Inc.
are the Respondents.

Appellate Case No. 2019-000238

————————

Appeal from Charleston County
Jennifer B. McCoy, Circuit Court Judge

————————

Opinion No. 27970
Heard February 11, 2020 – Filed May 13, 2020
Re-Filed August 12, 2020

————————

**AFFIRMED**

————————

John L. McCants, of Rogers Lewis Jackson Mann &
Quinn, LLC, of Columbia, for Appellant Builders Mutual
Insurance Company; and J.R. Murphy and Timothy J.

Newton, both of Murphy & Grantland, P.A., of Columbia, for Appellant Nationwide Mutual Insurance Company.

Justin O. Lucey and Joshua F. Evans, both of Justin O'Toole Lucey, P.A., of Mt. Pleasant, for Respondents Palmetto Pointe at Peas Island Condominium Property Owners Association, Inc. and Jack Love; Steven L. Smith, Zachary J. Closser, and Samuel M. Wheeler, all of Smith Closser Wheeler P.A., of Charleston, for Respondent Tri-County Roofing, Inc.; and James A. Atkins, of Clawson & Staubes, LLC of Charleston for Respondent WC Services, Inc.

Mark S. Barrow and Christy E. Mahon, both of Sweeny, Wingate & Barrow, P.A., of Columbia, and Steven M. Klepper, of Kramon & Graham, P.A., of Baltimore, Maryland, all for Amici Curiae Hartford Fire Insurance Company, Hartford Casualty Insurance Company, and Hartford Underwriters Insurance Company.

Frank L. Eppes, of Eppes & Plumblee, P.A., of Greenville, and Jesse A. Kirchner, Michael A. Timbes, and Thomas J. Rode, all of Thurmond Kirchner & Timbes, P.A., of Charleston, all for Amicus Curiae South Carolina Association for Justice.

---

**JUSTICE KITTREDGE:**  In this case, several insurance companies (the Insurers) appeal the denial of their motions to intervene in a construction defect action between a property owners' association (the Association) and a number of construction contractors and subcontractors (the Insureds).  The underlying construction defect action proceeded to trial, resulting in a verdict for the Association.

We find the Insurers were not entitled to intervene as a matter of right, and, further, the trial court did not abuse its discretion in denying them permissive intervention. Nonetheless, as we will discuss further, the Insurers most assuredly have a right to a determination of which portions of the Association's damages are covered under the commercial general liability (CGL) policies between the Insurers and the

Insureds.  As such, we reaffirm our prior holdings allowing insurance companies to contest coverage in a subsequent declaratory judgment action.

## I.

Palmetto Pointe at Peas Island (Palmetto Pointe) is a condominium development located in Charleston County near Folly Beach.  Following Palmetto Pointe's construction, the Association became aware of damage to the buildings, which they attributed to the Insureds.  As a result, the Association filed a construction defect action against the Insureds for negligence, breach of implied warranties, and unfair trade practices and sought $17.5 million in actual and consequential damages to repair or replace various components of the condominiums.  The Insureds each had one or more applicable CGL policies with the Insurers, and, pursuant to the CGL policies, the Insurers provided independent counsel to the Insureds to defend them in the action, subject to a reservation of rights to later contest whether the damages awarded in the action were covered by the CGL policies.  The Insurers were not made parties to the construction defect action and did not direct the Insureds' defense.

Approximately three years later, at the tail end of the discovery period, the Insurers individually motioned to intervene in the action "for the limited purpose of participating in the preparation of a special verdict form or a general verdict form accompanied by answers to interrogatories for [] submission to the jury during trial."  The Insurers disavowed any desire to be formally named as a party to the action, citing the likely prejudice to themselves and their clients (the Insureds).[1]  However, by motioning to intervene, the Insurers essentially sought to force the Association and the jury to itemize the damages against each Insured, which was not otherwise required.  In doing so, the Insurers hoped to ensure the jury would determine which portions of the damages were covered by the applicable CGL policies, thus obviating the need for the subsequent declaratory judgment action.

The trial court denied the motions to intervene, and the Insurers appealed to the

---

[1] *See, e.g.*, Rule 411, SCRE (prohibiting the admission of evidence tending to show a person was insured against liability); *Crocker v. Weathers*, 240 S.C. 412, 424, 126 S.E.2d 335, 340–41 (1962) ("The long-established rule of our decisions is that the fact that a defendant is protected from liability in an action for damages by insurance shall not be made known to the jury.  The reason of the rule is to avoid prejudice in the verdict, which might result from the jury's knowledge that the defendant will not have to pay it.").

court of appeals. We subsequently certified the Insurers' appeals pursuant to Rule 204(b), SCACR.

## II.

"The decision to grant or deny a motion to join an action pursuant to Rule 19, SCRCP, or intervene in an action pursuant to Rule 24, SCRCP, lies within the sound discretion of the trial court." *Ex parte Gov't Emps. Ins. Co.* (*Ex parte GEICO*), 373 S.C. 132, 135, 644 S.E.2d 699, 701 (2007). On appeal, this Court will not disturb the trial court's decision absent a manifest abuse of discretion that results in an error of law. *Id.* (quoting *Jeter v. S.C. Dep't of Transp.*, 369 S.C. 433, 438, 633 S.E.2d 143, 145 (2006)). Moreover, the error of law must be so opposed to the trial court's sound discretion "as to amount to a deprivation of the legal rights of the party." *Id.* (citation omitted).

## III.

The Insurers sought to intervene as a matter of right under Rule 24(a)(2), SCRCP. This Court has explained an entity seeking intervention as a matter of right under Rule 24(a)(2) must necessarily:

> (1) establish timely application; (2) assert an interest relating to the property or transaction which is the subject of the action; (3) demonstrate that it is in a position such that without intervention, disposition of the action may impair or impede its ability to protect that interest; and (4) demonstrate that its interest is inadequately represented by other parties.

*Berkeley Elec. Coop., Inc. v. Town of Mt. Pleasant*, 302 S.C. 186, 189, 394 S.E.2d 712, 714 (1990). With respect to the second element, we have compared having an interest in the action with constitutional standing, in that the intervenor must be a "real party in interest." *See Ex parte GEICO*, 373 S.C. at 138–39, 644 S.E.2d at 702–03 (describing a real party in interest as one who has a real, actual, material, or substantial interest in the subject matter of the action, as distinguished from one who has only a nominal, formal, or technical interest in, or connection with, the action (citing *Bailey v. Bailey*, 312 S.C. 454, 458, 441 S.E.2d 325, 327 (1994))); *see also Restor-A-Dent Dental Labs., Inc. v. Certified Alloy Prods., Inc.*, 725 F.2d 871, 874 (2d Cir. 1984) (explaining the interest required for intervention as a matter of right must be "direct," "immediate," and "significantly protectable," rather than "remote or contingent" (citations omitted)). As our precedent makes clear, the Insurers are not "real parties in interest" to the construction defect action

and, thus, cannot satisfy the four-part test espoused in *Berkeley Electric*. *See Ex parte GEICO*, 373 S.C. 136, 138–39, 644 S.E.2d at 701, 702–03.[2]

Because the Insurers have not shown they have a direct interest in the construction defect litigation for Rule 24(a)(2) purposes, we hold the Insurers have not met the requirements to intervene as a matter of right. *See Berkeley Elec.*, 302 S.C. at 189, 394 S.E.2d at 714 (listing an interest in the action as one of four elements required for intervention as a matter of right). As a result, we affirm the trial court's denial of the Insurers' motions to intervene as a matter of right. *See Restor-A-Dent*, 725 F.2d at 876 ("We are frank to admit that we are also influenced here by practical considerations that seem significant. A refusal to find a right under Rule 24(a) still leaves open the possibility in an appropriate case of permissive intervention by an insurer under Rule 24(b) for the purpose sought here, while a contrary holding would open the door wider to such intervention regardless of any unfortunate effect on the course of the main action. Moreover, a variety of factors properly bear on whether the type of intervention sought here should be allowed, and the trial judge's determination should ordinarily be accorded great weight. Application of subsection (b) of Rule 24 rather than subsection (a) recognizes these considerations, in view of the explicit emphasis in the former on undue delay or prejudice in the main action . . . .").

## IV.

Turning to permissive intervention, Rule 24(b), SCRCP, provides:

> Upon timely application anyone may be permitted to intervene in an action . . . (2) when an applicant's claim or defense and the main action have a question of law or fact in common. . . . In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original

---

[2] A significant number of courts discussing intervention as a matter of right under similar factual scenarios found the insurance companies' interests were contingent, rather than direct, for similar reasons. *See, e.g.*, *Am. Home Prods. Corp. v. Liberty Mut. Ins. Co.*, 748 F.2d 760, 766 (2d Cir. 1984); *Nieto v. Kapoor*, 61 F. Supp. 2d 1177, 1194 (D.N.M. 1999); *Davila v. Arlasky*, 141 F.R.D. 68, 70–73 (N.D. Ill. 1991); *Fid. Bankers Life Ins. Co. v. Wedco, Inc.*, 102 F.R.D. 41, 44 (D. Nev. 1984); *Universal Underwriters Ins. Co. v. E. Cent. Ala. Ford-Mercury, Inc.*, 574 So. 2d 716, 723 (Ala. 1990) (citing *U.S. Fid. & Guar. Co. v. Adams*, 485 So. 2d 720, 721–22 (Ala. 1986)); *Donna C. v. Kalamaras*, 485 A.2d 222, 223 (Me. 1984).

parties.

An intervenor seeking permissive intervention must: (1) establish timely application; (2) assert a claim or defense that has a question of law or fact in common with the underlying action; and (3) prove his participation in the underlying action will not delay or prejudice the adjudication of the rights of the original parties. "A reversal of a denial of permissive intervention has been termed 'so unusual as to be almost unique.'" *S.C. Tax Comm'n v. Union Cty. Treasurer*, 295 S.C. 257, 262, 368 S.E.2d 72, 75 (Ct. App. 1988) (quoting *New Orleans Pub. Serv., Inc. v. United Gas Pipeline Co.*, 732 F.2d 452 (5th Cir. 1984)).

The record is replete with facts rationally supporting the trial court's denial of the Insurers' motions for permissive intervention. We therefore conclude the Insurers have failed to prove the trial court abused its discretion. *See Ex parte GEICO*, 373 S.C. at 135, 644 S.E.2d at 701. In affirming the trial court, we need look no further than the third factor—the delay or prejudice to the original parties. There are facts in the record supporting the trial court's decision that the Insurers' intervention would (1) unnecessarily complicate the construction defect action, including altering the Association's burden of proof and possibly delaying the trial, and (2) create a conflict of interest for the Insureds' counsel, who were supplied to them by the Insurers.

## A.

As to the complication of the construction defect action, we note that, absent the Insurers' intervention, the Association has no need to parse its damages into categories corresponding to the coverage provided in a CGL policy.[3] Rather, as one of the Insurers conceded, the Association could properly request and receive a general verdict against all of the Insureds. However, with the addition of special jury interrogatories and verdict forms, the Association—as the plaintiff, *with the*

---

[3] Generally, a CGL policy does not cover the cost of repairing or removing faulty workmanship; however, the policy does cover the cost of repairing additional, consequential damage caused by the faulty workmanship, such as water intrusion caused by negligent construction. *See* S.C. Code Ann. § 38-61-70(B)(2) (2015); *Crossman Cmtys. of N.C., Inc. v. Harleysville Mut. Ins. Co.*, 395 S.C. 40, 49–50, 717 S.E.2d 589, 593–94 (2011) ("In sum, we clarify that negligent or defective construction resulting in damage to otherwise non-defective components [is covered under a CGL policy], but the defective construction would not [be covered].").

*burden of proof*—would have a heightened burden to itemize its damages into Insurer-defined categories which the Association may not have intended to present to the jury.  The Association's counsel here specifically bemoaned this exact problem.  According to counsel, at the time the Insurers motioned to intervene (three years into the action and at the end of discovery), the parties had conducted "in excess of 40 depositions wherein the question[s that would be] relevant to the special verdict [or] special interrogatory . . . weren't asked."

Further, in a subsequent declaratory judgment action, the Insureds and the Insurers have the collective burden to show which portions of the general verdict are covered under the CGL policies.  *See Gamble v. Travelers Ins. Co.*, 251 S.C. 98, 103, 160 S.E.2d 523, 525 (1968) (explaining the initial burden to prove that a loss is covered under an insurance policy is on the insured, and once the insured has done so, the burden shifts to the insurer to prove that an exclusion applies to defeat coverage); *see also Helena Chem. Co. v. Allianz Underwriters Ins. Co.*, 357 S.C. 631, 642 n.5, 594 S.E.2d 455, 460 n.5 (2004) (stating that, when relevant, the insured bears the burden to prove an exception to the exclusion applies in order to restore coverage).  Allowing the Insurers to intervene in the construction defect action in an attempt to segregate covered and non-covered damages would effectively place that burden of proof on the Association.  Through the trial court's decision to leave all coverage issues to a subsequent declaratory judgment action, the burden of proof concerning the coverage dispute will remain with the Insureds and the Insurers respectively, where it properly belongs.

Likewise, even if the Insurers were permitted to intervene, it would only grant them the ability to *request* special jury interrogatories and verdict forms under Rule 49(a) and (b), SCRCP.  However, it does not require the trial court *use* the requested documents at all, much less without modification.  *See Thomas v. Henderson*, 297 F. Supp. 2d 1311, 1325 n.16 (S.D. Ala. 2003); *Plough, Inc. v. Int'l Flavors & Fragrances, Inc.*, 96 F.R.D. 136, 137 (W.D. Tenn. 1982).  Were the Insurers to object to the trial court's failure to submit the proposed interrogatories or to the way the interrogatories were framed by the court, they could appeal and grind the entire construction defect trial to a halt.  *See Restor-A-Dent*, 725 F.2d at 877 (noting this complication, and stating, "While it is highly unlikely that such an appeal would be successful in view of a [trial] court's broad discretion in this context, nevertheless the possibility of this complication of the main action remains." (citation omitted)).

## B.

Additionally, a number of attorneys in this case raised concerns over the conflict of

interest inherent in allowing the Insurers to intervene.[4]  One of the most common worries expressed by the attorneys was that if the trial court permitted a verdict form with special interrogatories, it would place the Insureds' counsel in the untenable position of essentially conceding liability so as to focus instead on damages.  In particular, several counsel explained a special verdict form would force them to alter their presentation of evidence to shunt as much of the Association's damages as possible into covered, consequential damages (e.g., water intrusion *resulting from faulty workmanship*), thereby conceding the Insureds had, in fact, created faulty workmanship in the first place.  The concerns over the possibility—and likelihood—of a conflict of interest in these types of situations are echoed by a number of courts across the country.  *See, e.g.*, *Nat'l Fire Ins. Co. of Pitt., P.A. v. Bakker*, 917 F.2d 22 (4th Cir. 1990) (per curiam); *Restor-A-Dent*, 725 F.2d at 877; *Nieto*, 61 F. Supp. 2d at 1195 (noting the insured would not only have the burden of presenting a defense to the plaintiff's accusations, but were his insurance company allowed to intervene, he would also have the additional burden of having his insurance company interfere with his defense); *High Plains Coop. Ass'n v. Mel Jarvis Constr. Co.*, 137 F.R.D. 285, 290–91 (D. Neb. 1991); *Wedco*, 102 F.R.D. at 43; *Allstate Ins. Co. v. Keltner*, 842 N.E.2d 879, 882–83 (Ind. Ct. App. 2006) (noting the insurance company's argument that its insured would not want to seek an allocated verdict because it "would automatically expose [the insured] to liability on" the non-covered damages portion of the allocated verdict); *Donna C.*, 485 A.2d at 225; *Harleysville Grp. Ins. v. Heritage Cmtys., Inc.*, 420 S.C. 321, 363, 803 S.E.2d 288, 311 (2017) (Pleicones, A.J., dissenting) (opining it would be impossible for an insurance company to intervene in a construction defect suit and assert a defense against coverage without creating an impermissible conflict of interest (citation omitted)); Christopher Lyle McIlwain, *Clear as Mud: An Insurer's Rights and Duties Where Coverage Under a Liability Policy is Questionable*, 27 Cumb. L. Rev. 31, 52–53 (1997) (explaining courts frequently deny permissive intervention because "requiring the jury to focus on certain issues may prejudice the prosecution or defense of the plaintiff's claim, and may force the insured to take steps to assure coverage of claims rather than defend all claims").

We conclude there are facts in the record that support the trial court's decision that permissive intervention here would present conflict of interest concerns and likely cause undue delay and prejudice to the Association and the Insureds.  Accordingly, we hold the trial court did not abuse its discretion in denying the Insurers' motions

---

[4] In fact, all counsel provided by the Insurers to the Insureds refused to take positions on the motions to intervene for fear of a conflict of interest.

for permissive intervention.  *See, e.g.*, *Restor-A-Dent*, 725 F.2d at 877 ("Under all of these circumstances, we cannot say that the district judge abused his discretion here [in denying the insurance company's motion for intervention].").[5]

**V.**

According to the Insurers, their motions to intervene were mandated by our decisions in *Auto Owners Insurance Co. v. Newman*[6] and *Harleysville Group Insurance v. Heritage Communities, Inc.*[7]  We respectfully disagree, although the Insurers' position is understandable, especially with respect to *Newman*.

In *Newman*, a homeowner sued a construction contractor for the alleged defective construction of her home, and, following an arbitration proceeding, an arbitrator issued an award in favor of the homeowner.  385 S.C. at 190, 684 S.E.2d at 542.  In a subsequent declaratory judgment action between the contractor and its insurance company, the trial court found the CGL policy covered the damages awarded by the arbitrator.  *Id.* at 190–92, 198, 684 S.E.2d at 543, 547.  This Court affirmed in part and reversed in part, finding the CGL policy covered parts of the damages awarded by the arbitrator but did not cover other parts of the damages.  *Id.* at 196, 198, 684 S.E.2d at 545–46, 546–47.  However, the Court refused to review or parse the arbitrator's award, finding that arbitration awards are generally conclusive and will not be reviewed on the merits on appeal.  *Id.* at 198, 684 S.E.2d at 547 (citing *Pittman Mortg. Co. v. Edwards*, 327 S.C. 72, 76–77, 488 S.E.2d 335, 337–38 (1997) (stating an appellate court must affirm an arbitration award so long as it is "barely colorable")).

---

[5] Following the denial of the Insurers' motions to intervene, the trial court permitted the construction defect trial to go forward, despite the Insurers' pending appeals of those motions.  The Insurers thus also raise a question to this Court as to whether the trial court erred in allowing the trial to proceed while the appeals were still pending.  Because we have found the trial court did not abuse its discretion in denying the motions to intervene, the Insurers were not improperly excluded from participating in the construction defect trial.  As a result, this issue is moot, and we do not address it.

[6] 385 S.C. 187, 684 S.E.2d 541 (2009).

[7] 420 S.C. 321, 803 S.E.2d 288 (2017).

It was not the intent in *Newman* to categorically foreclose a subsequent declaratory judgment action to resolve a coverage dispute. To the extent *Newman* may be read to foreclose an insurance company's subsequent declaratory judgment action to resolve the coverage dispute, we modify *Newman* accordingly. South Carolina has long recognized the efficacy of declaratory judgment actions in this context. *See, e.g.*, *Sims v. Nationwide Mut. Ins. Co.*, 247 S.C. 82, 145 S.E.2d 523 (1965).

Turning briefly to *Harleysville*, a condominium property owners' association sued a construction contractor for the alleged defective construction of the condominium complex, and a jury awarded a general verdict to the property owners' association. 420 S.C. at 329–31, 803 S.E.2d at 292–94. In the declaratory judgment action between the insurance company and the contractor, the Special Referee ordered the insurance company to pay the entirety of the general verdict, despite the fact that the verdict included some losses that explicitly were not covered under the CGL policy, because he found that "it would be improper and purely speculative to attempt to allocate the [] general verdict[] between covered and non-covered damages." *Id.* at 332, 803 S.E.2d at 294. Notably, in the alternative, the Special Referee found the insurance company's reservation of rights letter to the insured was inadequate and constituted an implied waiver of the insurer's right to contest coverage in the declaratory judgment action. *See id.* at 336, 338, 803 S.E.2d at 296, 297. It was this latter basis—the inadequate reservation of rights letter—that served as the basis of this Court's affirmance of the Special Referee. *See id.* at 336–44, 803 S.E.2d at 296–301 (describing the reservation letter as a "generic denial[] of coverage coupled with furnishing the insured with a copy of all or most of the policy provisions (through a cut-and-paste method)"). The Court concluded the reservation of rights letter was so lacking that it was "insufficient to [actually] reserve [the insurance company's] right to contest coverage of actual damages," and, therefore, affirmed the Special Referee's decision. *Id.* at 343, 803 S.E.2d at 300. *Harleysville* neither mandates intervention in the underlying construction defect action nor forecloses a declaratory judgment action to resolve a coverage dispute.

## VI.

The parties offer varying approaches on the specifics of how a subsequent declaratory judgment action should be tried. It appears a significant point of contention is the Insurers' concern that any coverage decisions in the declaratory judgment actions will be bound by factual determinations made in the construction defect action. This point has been addressed by this Court in *Sims v. Nationwide Mutual Insurance Co.*

In *Sims*, the Court explained that, generally, "where an insurance company has notice and [an] opportunity to defend an action against its insured, the company is bound by pertinent material facts established against its insured, whether it appears in the defense of the action or not." 247 S.C. at 84–85, 145 S.E.2d at 524. However, the Court reasoned that rule could not apply in situations where the insurance company had a conflict of interest with its insured, such as when the company claimed the acts being sued over were partially or wholly outside the scope of the applicable insurance policy. *Id.* at 85–89, 145 S.E.2d at 524–26 (explaining the underlying purpose of the general rule is to obviate the delay and expense of two trials upon the same issue between parties whose interests are identical; and when a conflict of interest causes the parties' interests to diverge, "the judgment against the [insured] does not decide issues as to the existence and extent of the duty to indemnify," such that "in a subsequent action the [insurance company] may show that the circumstances under which [it] was required to give indemnity do not exist" (quoting *Farm Bureau Mut. Auto. Ins. Co. v. Hammer*, 177 F.2d 793, 799–801 (4th Cir. 1949) (citing the predecessor to the modern Restatement (Second) of Judgments § 58 (2020)))).

As further explained in section 58 of the Restatement (Second) of Judgments:

> [T]he indemnitor has a right to its day in court on whether the indemnitee's liability is within the scope of the indemnity obligation. . . .
>
> . . . [A]n indemnitor who has an independent duty to defend the indemnitee in effect has two legal capacities with regard to the indemnitee. In his capacity as insurer against the indemnitee's risk of being sued on claims that "might be found to be" within the indemnity obligation, the indemnitor has a responsibility to provide counsel and supporting assistance to defend the indemnitee without regard to the indemnitor's interests . . . . In his capacity as indemnitor, he has a responsibility to indemnify for such liability as may be within the indemnity obligation. *In the latter capacity, he should not be bound by determinations in an action in which he participated in the former capacity if there is a conflict of interest between the two*.

*See* Restatement (Second) of Judgments § 58 & cmt. a (emphasis added).

*Sims* is directly applicable to the parties' dispute here. As explained above, there is a conflict of interest between the Insurers and the Insureds as to the proper method of calculating damages vis-à-vis what portions of the Association's total damages

are covered under the CGL policies.  Thus, the Insureds and the Insurers are not precluded from introducing evidence as to which damages are covered (or excluded from coverage) by the CGL policies.  *See, e.g.*, *Universal Underwriters Ins. Co.*, 574 So. 2d at 723 ("Nevertheless, nothing in our law would bar [the insurance company] from litigating the coverage issue in a declaratory judgment action after the resolution of the underlying cases in this matter."); *Donna C.*, 485 A.2d at 224.  Having said that, the parties would be bound by the total amount of any jury verdict in the construction defect action.  *See* Restatement (Second) of Judgments § 58(1) (explaining the parties in the declaratory judgment action may not dispute the "existence and extent" of the judgment in the first action).

The Insurers and amici voiced their concerns that, in a declaratory judgment action, courts may reject any efforts to allocate a general verdict into covered and non-covered damages because that allocation requires some degree of speculation as to what the jury may have intended when issuing its verdict.  *Cf., e.g.*, *Harleysville*, 420 S.C. at 332, 803 S.E.2d at 294 (explaining the Special Referee found "it would be improper and purely speculative to attempt to allocate the [] general verdict[] between covered and non-covered damages").  We, too, are concerned about the possibility an insurance company may be unjustly forced to cover damages that are otherwise properly excluded under a CGL policy.[8]

Given that the parties in the declaratory judgment action are bound by the total verdict in the construction defect action, how then do we attempt to fairly allocate covered damages and non-covered damages?  This seems to be the biggest challenge to resolve.  We begin by noting that we do not oppose the parties coming to an agreement on a framework for allocating damages, subject to the approval of the court.  Failing an agreement of the parties, we set forth a default approach that shall serve as the framework for use in declaratory judgment actions for allocating covered and non-covered damages.  This default framework is utilized in other jurisdictions, and it allows litigants in a declaratory judgment action to use

---

[8] In fact, the insurance company in *Harleysville* attempted to use a percentage-based approach described more fully below, but the Special Referee rejected the evidence as "irrelevant and speculative."  Because the *Harleysville* majority issued its decision on the basis of the insurance company's inadequate reservation of rights letter, the Court did not address this finding by the Special Referee.  To avoid any future confusion, we reject the notion that, in a declaratory judgment action, it is "improper and purely speculative" to allocate a general verdict into covered and non-covered damages.  *See Harleysville*, 420 S.C. at 332, 803 S.E.2d at 294.

percentages, rather than exact dollar amounts, to determine the amount of covered and non-covered damages in a general verdict.

In the declaratory judgment action, the record of the merits trial shall be the primary source of evidence concerning matters litigated in that trial, such as the extent of the damages. Additional evidence that is relevant to the coverage dispute determination may be presented in the declaratory judgment action, including expert testimony,[9] but the additional evidence should be narrowly tailored to matters that were not actually litigated in the first trial.[10] The trier of fact shall then make a determination allocating on a percentage basis what portion of the underlying verdict constitutes covered damages and what portion constitutes non-covered damages. *See, e.g.*, *Duke v. Hoch*, 468 F.2d 973, 984 (5th Cir. 1972) (explaining that on remand to allocate a general verdict, the "primary source of evidence will be, of course, the transcript of the merits trial, containing the evidence on which the jury based its verdict. The trial judge, as trier of fact, will be in the position of establishing as best he can the allocation which the jury would have made had it been tendered the opportunity to do so. If it is impossible for the court to make a meaningful allocation based on only the transcript, [the judgment creditor, standing in the shoes of the insured,] should have the right to adduce additional evidence and [the insurance company] to present evidence in rebuttal."); *MedMarc Cas. Ins. Co.*, 199 S.W.3d at 60, 63 (describing in a declaratory judgment action the insureds' motion to allocate the general verdict in the underlying suit, and remanding the trial court's initial decision to allocate 25% of the jury verdict as covered damages because, while permissible to allocate by percentage, the trial court did not specify how it arrived at the 25% number); *Keltner*, 842 N.E.2d at 883 (noting the parties seemed to assume that if a general

---

[9] For example, in *Harleysville*, the insurance company proffered expert testimony from a general contractor who had prepared an estimate to completely repair the damaged condominium buildings. The expert segregated the portion of his estimate which constituted the cost to repair damages from water intrusion (covered damages) and determined what percentage of his total estimated damages that portion constituted. Finally, he took the percentage of the covered damages and multiplied it by the jury's verdict, arriving at an amount representing the approximate portion of the general verdict constituting the covered damages.

[10] For example, if the underlying merits trial results in a general verdict, the parties in the declaratory judgment action should be permitted to introduce evidence related to determining which portion of the damages are covered by the policy (or policies).

verdict was entered in the underlying action, there would be no later opportunity to distinguish between covered and non-covered damages, but holding that a supplemental proceeding in a declaratory judgment action "would offer an occasion for presenting evidence and argument regarding *a fair approximation* of the division of damages" (emphasis added)).

As we have acknowledged in this type of case in the past, perfect precision in allocating damages is not always achievable. Where perfect precision is not achievable, a fair approximation must suffice. *See Crossman*, 395 S.C. at 65–66, 717 S.E.2d at 602 (acknowledging that, after adopting a time-on-the-risk approach to progressive damage allocation, the time-on-the-risk "formula *is not a perfect estimate of the loss attributable to each insurer's time on the risk.* Rather, it is a default rule that assumes the damage occurred in equal portions during each year that it progressed. If proof is available showing that the damage progressed in some different way, then the allocation of losses would need to conform to that proof. However, absent such proof, assuming an even progression is a logical default." (italic emphasis added) (emphasis in original omitted)). Our exhaustive research persuades us that the percentage-based approach will best achieve a fair allocation of damages.

## VII.

For the foregoing reasons, we conclude the trial court did not abuse its discretion in denying the Insurers' motions to intervene and, therefore, affirm. In doing so, we also recognize that the Insurers have the right and ability to contest coverage of the jury verdict in a subsequent declaratory judgment action. In that action, the Insurers and the Insureds will be bound by the existence and extent of any jury verdict in favor of the Association in the construction defect action. However, they will not be bound as to any factual matters for which a conflict of interest existed, such as determining what portion of the total damages are covered by any applicable CGL policies.

**AFFIRMED.**

**BEATTY, C.J., HEARN, FEW and JAMES, JJ., concur.**